224

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH PIGRENET, Plaintiff in Error.

*Opinion filed November 30, 1962.*

CLEMENS HUFMANN, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and RUDOLPH L. JANEGA and M. ROBERT OSTROW, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Defendant, Joseph Pigrenet, was found guilty of unlawfully possessing narcotic drugs after a bench trial in the criminal court of Cook County and was sentenced to the penitentiary for a term of not less than three nor more

than five years. He prosecutes this writ of error contending solely that the evidence was insufficient to sustain the verdict. In particular, defendant insists that a conviction for unlawful possession of narcotics requires affirmative evidence that the accused knows he has narcotics in his possession and contends that such proof was lacking in this case.

Relevant evidence shows that Aldo J. Palma, a Federal narcotics agent, on June 15, 1959, about 5:45 P.M., met with agents Lambert, DeMorest, and Emrich and a special employee, George DeLuna, at Sangamon and Washington Streets in Chicago. After a short conference DeLuna left and Palma followed him to Ralph's Tavern, located on Madison Street east of Morgan Street, where DeLuna entered. As Palma walked by the tavern he saw DeLuna and defendant standing near the bar and, ten minutes later, he observed the two men leave the tavern and walk to the corner of Madison and Morgan where they separated. Defendant then went into a place called Harry's Restaurant and, after remaining there for twenty minutes, walked south on Morgan Street. Palma did not follow but remained in the vicinity.

At approximately 6:45 P.M., Palma saw the special employee, DeLuna, (who did not testify at the trial,) walk into an alley immediately south of Madison Street. He was followed by another man, one Corow, who was unknown to the agent. Palma himself walked into the alley where he saw DeLuna approaching the defendant. When Palma called out: "What is going on here?", defendant did not respond but dropped four foil wrapped packages to the ground which were subsequently found to contain heroin. The agent then placed defendant under arrest but Corow ran from the alley.

After the arrest, Palma and his fellow agents took defendant to their office, where he was finger printed and interrogated. According to Palma's testimony, he inquired:

"This your stuff?" and defendant replied "Yes." When asked: "What were you going to do with it?", defendant answered: "I was going to give it to the fellow who ran out of the alley." Palma added that defendant volunteered to cooperate with the agents, but that he refused such aid, saying: "No, we have got you with the goods on you.", whereupon defendant replied: "That is right." When asked whether he wished to make a signed statement the accused said: "What is the use? It doesn't make any difference, you have me.", and did not sign a statement.

Agent Lambert corroborated Palma in material respects. He testified that he had seen defendant, DeLuna, Corow and Palma enter the alley shortly after 6:35 P.M., and that he had arrested Corow as the latter ran from the alley a few minutes after Palma had entered. In detailing the events and conversations at the bureau after defendant's arrest Lambert said defendant had stated: "You have me up tight. There is no use for me giving a written statement."

It was stipulated that the chemist who analyzed the contents of the four packages dropped in the alley would testify, if called, that they contained heroin hydrochloride.

For the defense, the defendant, while admitting that he had seen DeLuna twice during the evening in question, denied possession of the packets of heroin, or that he had made the statements attributed to him by the agents, and testified that he had gone into the alley to have a drink with an acquaintance.

In order to support a conviction for unlawful possession of narcotics, the prosecution must establish the defendant's knowledge of the presence of narcotics and his immediate and exclusive control of them. (*People* v. *Nettles,* 23 Ill.2d 306.) Defendant places reliance upon authorities such as *State* v. *Nicolosi,* 228 La. 65, 81 So. 2d 771, and similar cases relied upon by the defendant in *People* v. *Mack,* 12 Ill.2d 151. Affirming the judgment of conviction of at-

tempted unlawful possession of narcotic drugs, the court, in *State* v. *Nicolosi,* observed: "Possession without knowlege of such possession is not possession in the legal sense of that word. * * * Knowledge is therefore an essential ingredient of the crime of possession of narcotics."

The quoted statement does not aid defendant because it is established in narcotics cases that although the element of knowledge is seldom susceptible of direct proof it may be proved by evidence of acts, declarations or conduct of the accused from which the inference may fairly be drawn that he knew of the existence of the narcotics at the place where they were found. (*People* v. *Mack,* 12 Ill.2d 151.) Whether the defendant's testimony denying his possession of narcotics is believed depends upon the credibility of the witnesses and the weight to be given their testimony, which are both matters for the jury, or for the trial court where, as here, a jury has been waived. (*People* v. *Richardson,* 21 Ill.2d 435; *People* v. *Embry,* 20 Ill.2d 331.) The requirement that defendant's guilt be proved beyond a reasonable doubt does not mean that the court may disregard the inferences flowing from the evidence before it. *People* v. *Nettles,* 23 Ill.2d 306.

A fair inference from the evidence is that as the agents were about to apprehend defendant he threw away packages containing narcotic drugs. The evidence is uncontradicted that Palma retrieved the packages which defendant threw away and that they contained heroin. The mere possession of a narcotic constitutes substantial evidence to sustain a finding that the possessor knew its nature. (*People* v. *Carlton,* 83 Cal. App. 2d 475, 189 P.2d 299.) Proof that defendant knew what was in the packages is not wanting merely because he did not say, when arrested, nor upon the trial, that he knew the nature of the contents. The fact that he dropped the packages on the approach of the officers strongly suggests that he knew what was in them. Furthermore, defendant's statements to Palma and Lambert reason-

ably admit of the conclusion that he knew that the packages contained narcotics. These admissions were statements of a fact pertinent to the issue and tended, in connection with proof of other facts, accepted as true by the trial court over defendant's denial, to prove defendant's guilt. (*People* v. *Richardson,* 21 Ill.2d 435.) In this connection it may be observed that the factual situation presented closely resembles *People* v. *Richardson,* and that substantially the same contentions urged here were made and rejected in that case.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*