**Richmond**

KENNETH L. TITCOMB

v.

JUDY WYANT, SUPERINTENDENT OF THE
HAYMARKET CORRECTIONAL UNIT

No. 0086-84

Argued April 10, 1985

Decided August 6, 1985

COUNSEL

R. Randolph Willoughby, for appellant.

Eugene Murphy, Assistant Attorney General (Gerald L. Baliles, Attorney General, on brief), for appellee.

OPINION

**BENTON, J.**—Kenneth L. Titcomb filed a petition for a writ of habeas corpus in the Virginia Supreme Court alleging that his trial and conviction should be nullified because of ineffective assistance of counsel. The writ was awarded returnable to the Circuit Court of Prince William County. After hearing the evidence at a plenary hearing, the circuit court found that Titcomb failed in his burden of proof and denied his petition for the writ. Titcomb initially appealed the circuit court's denial to the Supreme Court. On December 14, 1984, the Court dismissed this appeal, concluding that "exclusive jurisdiction over the appeal lies with the Court of Appeals, pursuant to Code §§ 17-116.04 and 17-116.05:4." *Titcomb v. Wyant,* __ Va. __, 323 S.E.2d 800 (1984).[1]

The questions before this court are whether Titcomb was denied effective assistance of counsel and whether it was error for the judge who presided at his criminal trial to hear and determine the

---

[1] Effective July 1, 1985, appeals from a final judgment of a circuit court involving a petition for a writ of habeas corpus lie directly and exclusively to the Supreme Court. Code §17-116.05:1B.

petition for a writ of habeas corpus.

At Titcomb's trial the complaining witness testified that at approximately 2:00 a.m. on August 7, 1982, a tow truck bearing the logo "Sundance Towing" stopped behind her disabled vehicle on the Washington Beltway. The driver agreed to tow the vehicle to her home in Annandale, Virginia, and attached the vehicle to the tow truck. After she joined the driver in the tow truck and the tow truck was underway, the driver displayed a gun and drove her to a location in Prince William County, where he sodomized and raped her. He then drove to her residence, unhooked her vehicle at approximately 5:30 a.m. and left.

The complaining witness further testified at trial that she had an opportunity to view the driver in the well-lighted parking lot of her apartment complex and in the interior light of the vehicle when the doors were opened on at least five occasions. She also testified that the driver identified himself as the owner of the towing business and referred to himself first as Mark and later as Ken.

Subsequent to the incident she was shown an array of six photographs. She identified the photograph of Titcomb as possibly being the driver and stated that the photograph of another person looked familiar. At the trial she positively identified Titcomb as the driver of the tow truck and the man who raped her.

Additionally, at trial the complaining witness was shown a picture of one of Titcomb's trucks, and she identified the logo on the truck as being the same logo on the truck driven by her assailant.

Titcomb testified at trial that he was the owner of Sundance Towing Service and that the logo identified by the complaining witness was the type of logo used on his vehicles. He also testified that the logos are magnetically attached to his trucks and that some of the logos had been lost, damaged or otherwise missing.

Special agent Richey, who interviewed Titcomb subsequent to the complaint, testified that Titcomb told him that none of his employees were in Virginia on the night and morning of the incident and that he was at home with his wife at the time the incident occurred.

Titcomb denied that he was the assailant; however, his testimony at trial was inconsistent with the statements that he allegedly made to Richey. Titcomb testified at trial that he had been processing scrap automobiles at his business continuously on the night of August 7. His testimony that no one, including himself, had left his place of business between 6 p.m., August 6, and 6:30 a.m., August 7, was supported by his brother, by one of his employees, and by an employee of a company buying scrap from Titcomb.

Titcomb was found guilty by a jury on March 3, 1983, and sentenced to ten years on the charge of rape and five years on the charge of sodomy. The Supreme Court denied his petition for direct appeal.

Titcomb's trial counsel testified at the habeas corpus proceeding that he received little cooperation from Titcomb after their initial conference in December, 1982. Despite his urgings, Titcomb, who lived in Maryland, did not see him again until three or four weeks before the trial, at which time they discussed the theory of the case and witnesses who could verify Titcomb's alibi. Counsel testified that he requested Titcomb to produce his witnesses but that Titcomb did not do so until the morning the trial began. Titcomb, on the other hand, testified that he supplied counsel with names of witnesses a month before trial but that counsel did not talk to the witnesses until the morning of the trial when they appeared to testify.

Trial counsel filed a discovery motion on February 11, 1982, which was not answered until the night of March 1, 1982. The trial commenced the morning after he received the Commonwealth's response. Counsel testified that he had discussed with Titcomb the possibility of a continuance because of the lateness of the Commonwealth's response but decided after receiving the response to proceed with the trial.

The United States Supreme Court has stated that "the right to counsel is the right to the effective assistance of counsel." *McMann* v. *Richardson,* 397 U.S. 759, 771, n.14 (1970). The Virginia Supreme Court has held that "the assistance of counsel includes the right to the care and skill which a reasonably competent attorney would exercise for similar services under the circumstances." *Stokes* v. *Warden,* 226 Va. 111, 116-17, 306

S.E.2d 882, 884 (1983); *Department of Corrections* v. *Clark,* 227 Va. 525, 533, 318 S.E.2d 399, 403 (1984).

In *Strickland* v. *Washington,* ___ U.S. ___, 104 S. Ct. 2052 (1984) the Supreme Court stated the elements that are required when ineffectiveness is alleged.

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at ___, 104 S. Ct. at 2064.

Titcomb advances several allegations of ineffectiveness that involve counsel's pretrial conduct and trial performance. Titcomb complains that counsel's performance was deficient at trial because he failed to request a continuance after telling Titcomb that he would do so; because he asked only two *voir dire* questions of the jury panel; because he did not cross-examine the victim's husband; because he failed to examine at length some witnesses; because he apologized to the victim; because he failed to submit an instruction which specifically covered an alibi defense; and because he failed to object to an "Allen" charge.

The circuit court found trial counsel's performance during the actual trial of the case to be that of a competent attorney. The court also found that any alleged failures by trial counsel at the trial stage could not be characterized as unreasonable trial tactics or unreasonable trial performance. We agree and address only those contentions that are not meritless.

Titcomb's argument that trial counsel's performance was deficient because he failed to submit an alibi instruction must fail.

The jury was properly instructed on the presumption of innocence and reasonable doubt; therefore, a separate instruction on alibi was neither necessary nor required. *Crabbe* v. *Commonwealth,* 221 Va. 419, 421, 270 S.E.2d 727, 728 (1980) (per curiam); *Minor* v. *Commonwealth,* 213 Va. 278, 281, 191 S.E.2d 825, 827 (1972).

Similarly, the contention that trial counsel should have objected to the instruction given to the jury after the court had been informed that the jury was deadlocked is not persuasive. (See the appendix to this opinion for the full text of the instruction). Trial counsel moved for a mistrial after the jury returned to its deliberations. The court properly denied this motion. The instruction to the jury was not coercive, was well within the discretion of the trial judge, and was proper. *Poindexter* v. *Commonwealth,* 213 Va. 212, 215, 191 S.E.2d 200, 203 (1972).

We believe that the other allegations regarding trial counsel's performance during the trial are meritless and are based upon conclusions that are not supported by the record. The record supports the finding of the circuit court that counsel's conduct at trial was within the range of reasonable professional competence. We conclude, therefore, that Titcomb has failed to overcome "the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'." *Strickland* v. *Washington, supra,* at ___, 104 S. Ct. at 2066.

Titcomb also contends that trial counsel was deficient in his preparation for trial. He claims that trial counsel failed to talk to defense witnesses until the day of the trial; failed to continue the case for further investigation when exculpatory evidence belatedly was delivered to him the evening prior to trial; failed to conduct adequate pretrial investigation; failed to disclose to Titcomb his "lack of experience in a rape case"; and failed to request a preliminary hearing.

The circuit court stated that "the greatest criticism or failure on the part of [trial counsel] is his preparation for trial" and "[u]nquestionably, [trial counsel] could have done more in preparation for trial." The court made a number of findings concerning counsel's pretrial preparation. Significantly, the court did not find expressly that trial counsel's performance was deficient, although it is apparent from its findings that the court believed counsel

should have been more diligent in his trial preparations. The court did find that trial counsel did not file any motions to suppress statements by Titcomb or other witnesses; made no motion for continuance when the Commonwealth provided exculpatory evidence in discovery the night before the trial; did not interview alibi witnesses until the day of trial — and then only briefly — and did not move to continue the trial and continue his interviews of witnesses; did not visit Titcomb's business or inspect any of Titcomb's tow trucks allegedly driven by the assailant; did not really investigate details related to him by Titcomb; and relied on Titcomb to locate and bring witnesses to establish the alibi defense. The court also found that trial counsel is an experienced lawyer who performs more civil than criminal work, and that Titcomb's trial was his first rape case. Although the record is somewhat ambiguous on the point, trial counsel testified at the hearing that he has tried over 100 criminal and civil jury cases.

■ The circuit court based its decision on Titcomb's failure to demonstrate any prejudice resulting from counsel's actions or omissions, and resolved against Titcomb the question "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland* v. *Washington, supra,* at ___, 104 S. Ct. at 2069 (no reason for a court to decide the performance component of ineffectiveness test if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice").

Recognizing that the issue of ineffectiveness may be a "mixed question of fact and law," *id.* at ___, 104 S. Ct. at 2070, we do not believe the court's criticism of trial counsel's pretrial performance without an express factual finding of deficiency impairs the validity of its conclusion. We share, to some extent, the reservations of the circuit court as to trial counsel's preparation for Titcomb's trial. The fact remains, however, that Titcomb proved no prejudice from trial counsel's conduct, even if it were to be assumed that his performance was deficient. While Titcomb cites many examples of alleged attorney errors, we note that not every error made by a lawyer during a criminal case amounts to ineffective assistance; moreover, "effective assistance of counsel means something other than successful assistance." *Peyton* v. *Ellyson,* 207 Va. 423, 426, 150 S.E.2d 104, 107 (1966). We see no need in this case for factual findings of deficiency — whether by this court

or the circuit court — in light of the finding that no prejudice resulted under the conjunctive test of *Strickland*. We turn, then, to Titcomb's contentions as to prejudice.

Titcomb denied involvement in the crimes and promised counsel that he would produce witnesses who were prepared to testify that Titcomb was elsewhere at the time the crimes were committed. Titcomb and his witnesses lived in Maryland and trial counsel lived in Virginia. Despite the serious nature of the charges against him, Titcomb waited until three weeks prior to trial to discuss the preparation of his defense with trial counsel. He did not manifest to counsel a desire to assist in the preparation for a criminal trial which could have serious consequences. On the morning of trial, Titcomb produced each witness whose testimony he had discussed with counsel. Each witness was interviewed by counsel prior to the trial; each witness testified as expected by Titcomb and counsel; and each witness was positive and clear in support of Titcomb's alibi.

It is undisputed that counsel did not interview Titcomb's witnesses until a few hours before the trial began. Titcomb maintains that this demonstrates inadequate preparation. This contention, however, must be considered in light of Titcomb's participation in the defense. Counsel testified that Titcomb failed to respond to several earlier requests that he provide counsel with the names of witnesses. Counsel also testified that he considered withdrawing from the case because of Titcomb's delay in disclosing these persons.

Titcomb presented three witnesses at the habeas corpus hearing who were not interviewed by trial counsel and who did not testify at trial. At best, the testimony of those witnesses would have been merely cumulative evidence. Samuel Williams testified that he was at Titcomb's place of business "off and on" the night of August 6 and the morning of August 7. He "was hauling cars from Montgomery County to Hagerstown, Maryland — which is approximately two and a half hours round-trip." He testified further that he left Titcomb's place of business for these trips once at 2:00 a.m. and again at 5:00 a.m. Daniel Klein testified that he left Titcomb's place of business at midnight on August 6. This testimony must be assessed in view of the victim's trial testimony that the tow truck first appeared at approximately 2:00 a.m. and that she got home at approximately 5:30 a.m.

Titcomb's wife testified that she was unable to attend the trial because of illness and that, in any event, Titcomb did not want her to become involved. At the habeas corpus hearing she was not asked to testify about her or Titcomb's whereabouts during the morning of August 7.

The jury chose to believe the complaining witness, who had picked two pictures, one of which was Titcomb's, from a picture spread, and who positively identified Titcomb at trial.

Titcomb's claim that trial counsel erred in not demanding a preliminary hearing must be considered in view of the holding in *Webb* v. *Commonwealth,* 204 Va. 24, 129 S.E.2d 22 (1963), that a preliminary hearing for a defendant accused of a felony is not required where an indictment has been returned by a grand jury. Titcomb was arrested subsequent to the grand jury indictment. *See also Braxton* v. *Peyton,* 365 F.2d 563 (4th Cir.), *cert. denied,* 385 U.S. 939 (1966).

We hold, therefore, that the evidence is insufficient to make the required showing of prejudice and that Titcomb has failed in his burden of showing that his conviction resulted from a proceeding that lacked fundamental fairness.

■ Finally, apart from the absence of any motion or objection below and the attendant difficulty under Rule 5A:18, we find no error in the same judge presiding over Titcomb's trial and the habeas corpus proceeding. We believe that in most cases where the petitioner raises a claim of ineffective counsel it is logical and appropriate for the trial judge to hear the petition for the writ. The trial judge will have the advantage of having seen trial counsel's performance, which may be skillful or deficient, in the context of an adversary proceeding. *See United States* v. *Blue Thunder,* 604 F.2d 550 (8th Cir.), *cert. denied,* 444 U.S. 902 (1979). The trial judge also will have heard the evidence and gauged the credibility of witnesses. We see no reason, as Titcomb apparently requests, to presume bias or prejudice on the part of the trial judge. Absent a specific showing of bias or prejudice, we cannot say that the trial judge should have been disqualified from presiding over the habeas corpus proceeding.

For the foregoing reasons, the judgment of the circuit court is affirmed.

*Affirmed.*

Baker, J., and Duff, J., concurred.

# APPENDIX

THE COURT: * * *

What I am about to say does not mean that you are going to be made to agree or that you are going to continue deliberations until you arrive at a verdict.

Trials are expensive and the jury must decide the issues in the case. If you cannot decide, then we will have to get another jury to decide the issues. I see no reason why you as jurors are not as competent and able to decide the issues as any other jury.

It is your duty to make an honest and sincere attempt to reach a verdict. Of course, that must be unanimous. Jurors should be open-minded and listen to argument of others.

Talk over the issues and evidence freely and fairly. Each juror must decide the issue for himself or herself, but only after an impartial consideration of the evidence with his or her fellow jurors.

In the course of deliberations a juror should not hesitate to re-examine his or her views and change his or her opinion if convinced it is erroneous.

Each juror in the minority view should reconsider such minority view in light of the opinion of the majority. And, likewise, each juror in the majority view should give equal consideration to the views of the minority.

No juror should surrender his or her conviction as to the weight of the evidence, solely because of the opinion of his or her fellow jurors or for the mere purpose of returning a verdict.

As fairminded individuals, then, I'm asking you to go back, to retire, to make another honest effort to come to a conclusion on all the issues presented in the case, keeping in mind what I said to you in this instruction.

Thank you and you may retire for one more effort.