**Richmond**

JIMMIE HUGENE WOODSON, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 0743-90-2

Decided June 23, 1992

788

COUNSEL

John B. Mann (Levit & Mann, on brief), for appellant.

Robert Q. Harris, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

Opinion

**KOONTZ, C.J.**—Jimmie Hugene Woodson, Jr., appellant, was convicted in a jury trial of possession of cocaine, possession of marijuana and obstruction of justice, and was sentenced to a total of two years and thirty days. On appeal, he contends that (1) the trial court erred in refusing to suppress the results of the search; (2) insufficient evidence supported his conviction for possession of cocaine; and (3) insufficient evidence supported his conviction for obstruction of justice. We affirm the convictions.

On November 24, 1988, police officers executed a search warrant for drugs at 1427 North 29th Street in the City of Richmond. During the search, Detective D.R. Carter was stationed at the front door of the house "to make sure no one left or no one came in." The police were still looking for another individual connected with the search warrant being executed at the dwelling.

From his post, Detective Carter observed a car drive by the house "at a very slow pace" and stop a short distance down the street. As the car passed, at least one occupant of the car looked in Carter's direction. After the car stopped, one passenger, appellant's father, left the car and walked toward the house. Detective Carter recognized this person as Jimmie Woodson, Sr., a former police officer who had been "convicted of drugs" and forced to leave the police department. When Woodson, Sr., got within twelve feet of the house, Carter called his name; however, Woodson, Sr., turned and walked away from the house but did not return to the car.

Detective Carter then walked to the parked car, with his gun in his right hand down by his side. He was not in uniform, but wore a police badge on a neck chain. Carter noticed three individuals in the car. He approached the driver's side and announced, "Police officer. Gentlemen, put your hands where I can see them." Two passengers immediately complied but the driver, Woodson, did not. Woodson was looking at Carter when he announced his presence. Woodson then "turned to his right with his body and went down to his right side." At that time, Carter opened the car door and saw that Woodson had a gun in his right hand.

Carter grabbed Woodson's wrist and, at the same time, placed his police revolver under Woodson's neck. Carter told Woodson to

drop his weapon, and the gun fell to the floor. Detective Carter called for assistance and continued to struggle with Woodson. Woodson was trying to put his hand in his pocket. Carter testified that Woodson was "going back towards the floor" when Detective Brunson approached the passenger side of the car. Brunson seized the gun, a loaded chrome-plated .357 revolver.

Additional officers arrived to help restrain Woodson. Once he was handcuffed, Woodson stated, "Okay. I am an addict. You have got me. It is in my right front pocket. I am an addict." A small "ziploc" plastic bag containing a folded twenty dollar bill with 1.57 grams of cocaine inside was found in Woodson's pocket. The officers also found a hand-rolled marijuana cigarette and a cellophane wrapper containing marijuana in Woodson's shirt pocket.

Woodson first challenges the trial court's denial of his motion to suppress the evidence seized during the search of his person. The Commonwealth contends that Woodson's failure to make the transcript of the pre-trial suppression hearing part of the record on appeal bars our review of this issue.

Prior to trial, Woodson filed a motion to suppress the evidence seized after his arrest. Following a hearing, the trial court denied the motion. At trial, Woodson renewed his motion at the close of the Commonwealth's case. The record reflects that the trial court and defense counsel discussed the evidence presented at the pre-trial suppression hearing and at trial, noting their differing recollections of the evidence presented at the pre-trial hearing. The trial court and defense counsel also acknowledged that the evidence presented at the pre-trial hearing differed, in some respects, to that presented at trial. The court denied the renewed motion.

■ Where a transcript is not part of the record on appeal, we may reach the merits of the case if the record "is sufficient in the absence of the transcript to determine the merits of the appellant's allegations." *Turner v. Commonwealth*, 2 Va. App. 96, 99, 341 S.E.2d 400, 402 (1986); *see also Bunton v. Commonwealth*, 6 Va. App. 557, 561, 370 S.E.2d 470, 472 (1988). The Commonwealth argues that we may not reach the merits here because the trial court relied upon its earlier ruling and disagreed with defense counsel as to the evidence from the suppression hearing. We disagree with the Commonwealth's argument. Upon review of the rec-

ord, we find that the pre-trial hearing transcript is not indispensable to our resolution of the suppression issue because the record which contains the trial transcript is sufficient to determine the merits of appellant's challenge.

■ In order to determine whether the evidence should have been suppressed, we must first decide whether Woodson was "seized" within the meaning of the fourth amendment's prohibition against unreasonable search and seizure. A seizure occurs when the "circumstances . . . amount to a show of official authority such that 'a reasonable person would have believed that he was not free to leave.' " *Florida v. Royer*, 460 U.S. 491, 502 (1983) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)); *see also Goodwin v. Commonwealth*, 11 Va. App. 363, 365, 398 S.E.2d 690, 691 (1990). Here, Detective Carter with his gun in his hand approached the car, announced that he was a police officer, and ordered the occupants of the car to "put your hands where I can see them." The officer's announcement of official authority coupled with his subsequent command for the parties to do as they were told would certainly indicate to a reasonable person that he or she was not free to disregard the officer's request or otherwise carry on with his or her business.[1] Indeed, Carter's command effectively prevented the occupants from leaving, thereby restricting their freedom of movement. The order to "put your hands where I can see them," in this context, amounts to a significant restraint on the individual's freedom of movement sufficient to invoke the protections of the fourth amendment.

---

[1] We recognize that an officer's approach of an individual in a public place generally does not constitute a seizure. "Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual in a public place, by asking him if he is willing to answer some questions or by putting questions to him if he is willing to answer." *Richards v. Commonwealth*, 8 Va. App. 612, 615, 383 S.E.2d 268, 270 (1989)(citing *Florida v. Royer*, 460 U.S. 491, 497 (1983)). In *Richards*, for example, appellant was standing, stationary, outside an airport building when two officers approached him, asked if they could speak with him and asked to see his airline ticket and identification. *Id*. Finding that the circumstances did not demonstrate a show of authority such that Richards was not free to leave, we held that the mere approach and questioning of Richards did not amount to a seizure. *Id*. Here, the initial confrontation between Carter and Woodson was not " 'the sort of consensual encounter that implicates no Fourth Amendment interest.' " *Id*. (quoting *Florida v. Rodriguez*, 469 U.S. 1, 5-6 (1984)(per curiam)). Unlike *Richards*, the officer here did not merely approach Woodson and ask if he would be willing to answer some questions. Therefore, the encounter between Carter and Woodson cannot be said to fall within that line of cases holding that an officer may approach an individual in a public place and put questions to him if he is willing to answer.

Therefore, we find that a reasonable person would conclude, from these circumstances, that he or she was not free to leave the officer's presence.[2] *See Moss v. Commonwealth*, 7 Va. App. 305, 307-08, 373 S.E.2d 170, 172 (1988) (holding that the manner in which a uniformed officer confronted defendant with a blinding flashlight amounted to a seizure).

■ Having found that Woodson was seized by Carter's announcement and show of authority, we must next determine whether Carter had adequate grounds to "stop" Woodson.[3] In order to justify the stop, the fourth amendment requires that the officer have a " 'reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.' " *Id.* at 308, 373 S.E.2d at 172 (quoting *Brown v. Texas*, 443 U.S. 47, 51 (1979)). Whether an officer entertained the requisite suspicion to justify the stop is an "objective assessment." *Murphy v. Commonwealth*, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989). We must view "the totality of the circumstances and view those facts objectively through the eyes of a reasonable police officer with the knowledge, training, and experience of the investigating officer." *Id.* An unparticularized suspicion or hunch will not satisfy the requirements of the fourth amendment. *Id.* (citing *Reid v. Georgia*, 448 U.S. 438, 441 (1980)). Upon review of the record, we find that the evidence was sufficient to support a reasonable suspicion that Woodson was involved in criminal activity.

---

[2] The Commonwealth relies upon *California v. Hodari D.*, 499 U.S. 621 (1991), for its assertion that Woodson was not seized by Officer Carter's announcement and show of authority. The Commonwealth is correct that *Hodari D.* holds that a suspect must submit to the officer's show of authority before a seizure has occurred. While we agree that Woodson's actions were inconsistent with a submission to the officer's command, the facts in the present case are clearly distinguishable from the chase of the subject in *Hodari D.* Here, Woodson was confined to his vehicle. Moreover, because Officer Carter was positioned next to the vehicle it is reasonable to assume that had Woodson attempted to exit the vehicle for the purpose of leaving the scene and thus not submitting to the officer's command, he would have been immediately seized by physical force. For these reasons, we decline to rest our decision upon the reasoning of *Hodari D.*

[3] We recognize the distinction between the police approach of a vehicle that has been voluntarily stopped, or parked, in a public place (see footnote 1) and the stop of a moving vehicle by the police. However, because we find that Carter's approach of Woodson's vehicle and his immediate announcement and show of authority constituted a seizure, our analysis focuses on whether that conduct was supported by reasonable suspicion, which is the test for measuring the constitutionality of a "stop" of a vehicle.

At the time the search was being conducted at the house, the police were still looking for another individual connected with the search warrant being executed at that house. Detective Carter testified that he saw the car move very slowly by the house and stop a short distance down the street. As the car passed, Carter saw at least one of the occupants look in his direction. Carter recognized one of the occupants of the car as Woodson's father, who was known for his prior involvement with drugs. Woodson's father walked up to the house but, when Carter called out to him, he walked away and did not return to the car. Any one of these circumstances might be sheer coincidence and not justify further investigation. However, when viewed together, these facts provide an objective basis for Detective Carter's suspicion that an occupant of the car might be connected with the drug activity associated with the house.[4]

■ "The fourth amendment does not proscribe all seizures, only 'unreasonable' seizures." *Bethea v. Commonwealth*, 14 Va. App. 474, 476, 419 S.E.2d 249, 250 (1992) (en banc) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). In *Bethea*, we recently held that an officer's request or directive for a passenger to step out of a lawfully detained vehicle was a reasonable seizure under the fourth amendment. In doing so, we explained the balancing test to be used in determining whether a seizure meets the fourth amendment's standard of reasonableness.

Whether a seizure is unreasonable is determined by balancing the individual's right to be free from arbitrary governmental intrusion against society's countervailing interest in preventing or detecting crime and in protecting its law enforcement officers.

*Id.* (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)). In balancing Woodson's interest in being free from arbitrary interference by state agents against the Commonwealth's in-

---

[4] At trial, the court and defense counsel disagreed as to whether the evidence at the pre-trial suppression hearing showed that Woodson's car had failed to stop at a stop sign before passing the house where the search warrant was being executed. Because we have not been provided with a transcript of the suppression hearing, we are unable to consider this factor in our analysis of whether Carter had adequate grounds to approach the vehicle. Nonetheless, in reviewing the record, we find that there are sufficient facts giving rise to a reasonable suspicion of criminal activity even without this purported evidence.

terest in protecting its law enforcement officers, we find that, under the circumstances, the intrusion occasioned by being required to place one's hands within view of the investigating officer is minimal. The facts in this case accurately illustrate the hazards law enforcement officers encounter in roadside stops. *See id.* at 478, 419 S.E.2d at 251-52 (recognizing that an officers approach of a person seated in a car exposes the officer to danger from assault and unobserved movements). Like the directive for a passenger to step out of a car, the order to "put your hands where I can see them" "involves no touching or frisking or physical intrusion of the person, is of short duration, and the safety interest to be protected is 'legitimate and weighty.'" *Id.* at 478, 419 S.E.2d at 252. Consequently, we find that the seizure was reasonable.

Woodson also argues that the evidence was insufficient to support his conviction for possession of cocaine. Specifically, he contends that the evidence was insufficient to prove that he knowingly and intentionally possessed the cocaine because he did not know the twenty dollar bill contained cocaine.[5]

 When reviewing the sufficiency of the evidence on appeal, "we must view all the evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom. The jury's verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it." *Traverso v. Commonwealth*, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988) (citations omitted).

 "To convict a defendant of possession of an illegal narcotic drug, the Commonwealth must show that the defendant was aware of the presence and character of the drug and was intentionally and consciously in possession of it." *Hairston v. Commonwealth*, 5 Va. App. 183, 186, 360 S.E.2d 893, 895 (1987). "'[K]nowledge . . . may be proved by evidence of acts, declarations or conduct of the accused from which the inference may be fairly drawn that [the accused] knew of the existence of narcotics at the place where they were found.'" *Id.* (quoting *People v. Pigrenet*, 26 Ill. 2d 224, 227, 186 N.E.2d 306, 308 (1962)). The evidence shows that Woodson told the police that he was "an addict" and he directed their attention to the cocaine in his shirt

---

[5] Woodson testified that the twenty dollar bill had been given to him as repayment of a loan and the bag was a gift, but he did not know that the powder was cocaine.

pocket. From these acts and declarations, the jury could reasonably have found that Woodson knew of the presence and character of the substance and that he was intentionally and consciously in possession of it.

Woodson next contends that the evidence was insufficient to support his conviction for obstructing justice in violation of Code § 18.2-460. A violation of former Code § 18.2-460(A), now Code § 18.2-460(B), occurs when "any person, by threats, or force, knowingly attempts to intimidate or impede . . . any law-enforcement officer, lawfully engaged in his duties."[6]

Woodson argues that there was no *intent*, as required by the statute, to impede an officer in the performance of his duties. Specifically, he contends that there was no proof that he intended to use the gun in an offensive manner because he did not assault, threaten, or point the gun at the officer. We disagree. It is not Woodson's intent to use the gun in an offensive manner that is prohibited by the statute; rather, it is his intent to impede a police officer in the performance of his duties that is the gravaman of the statute.

"Intent is the purpose formed in a person's mind which may be shown by his statements or conduct." *Polk v. Commonwealth*, 4 Va. App. 590, 595, 358 S.E.2d 770, 773 (1987) (citing *Johnson v. Commonwealth*, 209 Va. 291, 295, 163 S.E.2d 570, 574 (1968)). Viewing the evidence in the light most favorable to the Commonwealth, as we must, *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975), we find that Woodson's conduct provided sufficient proof from which the jury could find that he intended to impede Detective Carter in the performance of his duties. When Detective Carter approached the car, announced that he was a police officer and directed an order to the occupants, Woodson immediately reached for a gun. A struggle ensued, and the gun fell to the floor of the car. Carter saw Woodson "going back towards the floor." From this evidence, the jury was entitled to find that Woodson's actions in grabbing a loaded gun and continuing to struggle for its possession, in re-

---

[6] Detective Carter was "lawfully engaged" in his duties as a law enforcement officer. Carter was assisting in the execution of a search warrant near the location where Woodson's car passed and his approach of Woodson's vehicle was in furtherance of his official police duties.

sponse to Detective Carter's approach and announcement, constituted an attempt to impede Carter in his official duties. This conduct provides sufficient evidence from which the jury reasonably could have found the requisite intent to impede. *See Polk*, 4 Va. App. at 595-96, 358 S.E.2d at 773.

Furthermore, it is not necessary that there be an assault or physical threat in order to find criminal intent under this statute. In *Polk*, the defendant made verbal threats to or about a police officer at the time of the arrest and during post-arrest processing. We held that Polk's verbal threats demonstrated his intent to intimidate or impede the officer in the performance of his duties. *Id*. Therefore, the fact that Woodson did not assault or point a gun at the officer does not remove his conduct from the purview of the statute.[7]

In summary, Woodson's seizure was supported by reasonable suspicion and, therefore, the evidence seized from his person was properly admitted into evidence at trial. Moreover, Woodson's conviction for possession of cocaine was supported by sufficient evidence. Finally, the evidence was sufficient to demonstrate Woodson's intent to impede an officer in the performance of his official duties. Accordingly, we affirm his convictions for possession of cocaine, possession of marijuana and obstruction of justice.

*Affirmed*.

Duff, J., concurred.

Benton, J., dissenting.

"When the police stop a motor vehicle and detain an occupant, this constitutes a 'seizure' of the person for Fourth Amendment purposes, even though the function of the stop is limited and the detention brief." *Zimmerman v. Commonwealth*, 234 Va. 609, 611, 363 S.E.2d 708, 709 (1988) (citations omitted). The events that led to the conviction of Jimmie Hugene Woodson, Jr., began as a result of an unlawful seizure.

It is well-established that an investigatory stop may be initiated only when an officer has "a reasonable suspicion, based

---

[7] Woodson asserts, by way of defense, his right to resist an unlawful arrest. Because Woodson was lawfully arrested, we do not address this contention.

on objective facts, that the individual is involved in criminal activity." When examining the officer's articulable reasons for stopping a person, we examine the objective reasonableness of the officer's behavior rather than the officer's subjective belief that the conduct indicates criminal activity.

*Riley v. Commonwealth*, 13 Va. App. 494, 496-97, 412 S.E.2d 724, 725 (1992) (quoting *Brown v. Texas*, 443 U.S. 47, 51 (1979)). The record proves that "[t]he detaining officer [did not] 'have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Zimmerman*, 234 Va. at 612, 363 S.E.2d at 710 (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).

The evidence proved that eight police officers battered down the door of a residence in the City of Richmond to gain entry to search for drugs. Sergeant D.R. Carter was guarding the entrance to the residence and "took a position where the front door used to be [because] the door was knocked down." While Carter was standing watch, he observed a vehicle as it passed the residence. The majority observes that Carter noticed that the head of the man "in the rear [of the vehicle] was . . . turned toward" the residence being searched. Carter did not testify that the man's conduct was indicative of criminal conduct. Indeed, nothing in the record suggests that it would be abnormal for a passerby to look at an armed man standing in a doorway. Carter did not testify that either the driver or the front passenger looked in the direction of the residence.

The majority gleans some undisclosed significance from Carter's testimony that the vehicle was moving at a "slow pace." However, the evidence provides a rational explanation for the vehicle's speed. The vehicle was twenty-five feet away from Carter when he first noticed it. After the vehicle passed Carter, it stopped. Carter described the distance the car travelled past the residence:

I was at [the residence being searched]. There is a house there and I believe there are two more units within that row of houses and it is the corner. Then on the opposite side of the corner of the street is 30 feet wide, I would say, 65 or 70 feet, maybe. Maybe further.

These added facts prove that when Carter first saw the vehicle it was about to stop. That the vehicle was travelling at a "slow pace" in a residential neighborhood immediately prior to the stop is not unusual, significant, or suspicious.

When the vehicle stopped, the man in the rear exited the vehicle and walked on the sidewalk. When he was in front of the residence, he turned and looked at the residence. Carter realized that he knew the man and called his name. The man "rapidly turned away and continued to walk" in the direction he originally was walking — away from the vehicle. Although Carter testified that he knew the man to be a drug user, Carter did not find his conduct suspicious enough to warrant following him. Rather, Carter went in the other direction. Carter chose to approach a vehicle containing individuals who Carter could not identify and who had engaged in no behavior giving rise to an articulable suspicion of illegal activity.

Carter, with his weapon in his hand, ordered the occupants of the vehicle to remain in place. The Commonwealth asks this Court to uphold the lawfulness of the seizure of the occupants because the vehicle was traveling slowly when Carter first saw it. Nothing in Carter's testimony suggests that he had "a particularized and objective basis for suspecting [the occupants of the vehicle] of criminal activity." *Cortez*, 449 U.S. at 417-18. The majority's conclusion to the contrary is not supported by the facts. An objective assessment of the totality of the circumstances requires more than a recitation of the minutia of the factual setting. Unless the objective facts are shown to give rise to a reasonable articulable suspicion of criminal conduct, the seizure is unlawful. The record proves only that Carter had a subjective hunch that caused him to decide to investigate the vehicle and detain the occupants. A "hunch" is "too slender a reed" to satisfy the requirements of the fourth amendment. *Reid v. Georgia*, 448 U.S. 438, 441 (1980).

Every citizen has a constitutionally guaranteed right not to be stopped at the unfettered discretion of police. That right is protected even though the police may consider the intrusion to be a mere inconvenience. "Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions.' " *Davis v. Missis-*

*sippi*, 394 U.S. 721, 726-27 (1969). One of the most fundamental fourth amendment principles requires that, "in justifying a particular intrusion, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Lansdown v. Commonwealth*, 226 Va. 204, 209, 308 S.E.2d 106, 110 (1983), *cert. denied*, 465 U.S. 1104 (1984) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). "In the absence of any basis for suspecting [Woodson] of misconduct, the balance between the public interest and [Woodson's] right to personal security and privacy tilts in favor of freedom from police interference." *Brown v. Texas*, 443 U.S. 47, 52 (1979).

We all recognize that the police face difficult tasks when working at night. However, the majority allows the hazards of the police work to confuse the issue. A citizen's right to be free of arbitrary police interference cannot be overcome by reciting slogans. Woodson's interest in being free from arbitrary interference by police agents existed when Carter made the subjective decision to seize him — long before his struggle with Carter. We also would do well to recall that it is not just police officers who are at risk on the roads of this country at night. Citizens are also equally at risk of being victimized by persons who approach vehicles at night under the guise of offering assistance, *see Titcomb v. Wyant*, 1 Va. App. 31, 33, 333 S.E.2d 82, 83 (1985); or under the pretext of being an un-uniformed police officer. *See Hill City Trucking v. Christian*, 238 Va. 735, 737, 385 S.E.2d 377, 378 (1989); *State v. Gagnon*, 18 Conn. App. 694, 713, 561 A.2d 129, 132 (1989); *Commonwealth v. Garafolo*, 23 Mass. App. Ct. 905, 906, 499 N.E.2d 839, 840 (1986).

Carter testified that he went to the vehicle and ordered the occupants to remain in place because the vehicle was traveling slowly when he first saw it. He gave no other reason for his decision to approach the vehicle. Carter was not in uniform and was carrying an automatic weapon in his hand. Although Carter testified that he had a badge around his neck on a chain, he also testified that this incident occurred in the dark of night. I would hold that, apart from the constitutional violation that occurred when Carter ordered the occupants to remain in place, the evidence did not prove beyond a reasonable doubt that Woodson had the requisite criminal intent necessary to prove a violation of Code § 18.2-

460(B) ("knowingly attempts to intimidate or impede . . . any law enforcement officer, lawfully engaged in his duties"). The record proved no observable indicia of authority that would have put Woodson on notice that Carter was in fact a law enforcement officer. *Cf. Gagnon*, 18 Conn. App. at 713, 561 A.2d at 132 (criminal defendant in plain clothes introduced himself as a police officer before assaulting victim); *Garafolo*, 23 Mass. App. at 906, 499 N.E.2d at 840 (criminal defendant in plain clothes introduced himself as a narcotic officer before abducting victim). Proof that Woodson resisted an unknown man in the dark, carrying an automatic weapon, dressed in street clothes, who announced himself to be a police officer, is insufficient to prove the specific intent required by Code § 18.2-460(B).

For the reasons here stated and because the only evidence supporting Woodson's conviction for possession of cocaine was the product of the unlawful stop and detention of Woodson, I would hold that the evidence should have been suppressed and that the conviction must be reversed. I dissent.