COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judge Chaney and Senior Judge Humphreys
Argued at Richmond, Virginia


BRIAN LESTER WALTON, SR.

                                    MEMORANDUM OPINION[*] BY
v.      Record No. 1945-23-2          JUDGE ROBERT J. HUMPHREYS
                                         APRIL 8, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF MIDDLESEX COUNTY
Jeffrey W. Shaw, Judge

(Michael T. Soberick, Jr.; Dusewicz & Soberick, on brief), for
appellant. Appellant submitting on brief.

Justin M. Brewster, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Brian Lester Walton, Sr. appeals his convictions, following a bench trial, for driving

under the influence of alcohol (DUI), obstructing justice by threats or force, refusing to provide a

sample of his breath, and disregarding a law-enforcement command to stop, in violation of Code

§§ 18.2-266, -460, -268.3, and 46.2-817(A).[1] On appeal, Walton argues that the evidence was

insufficient to prove his convictions. For the following reasons, we disagree, and affirm the

convictions.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing

party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Walton was also charged with driving on a suspended or revoked license, which the
circuit court struck on Walton's motion.

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On June 24, 2023, Deputy J. Gonzalez and Corporal Ronald Hirtz responded to a call that Walton was driving on a revoked driver's license and that his vehicle had expired tags. Upon arriving in the area of the call, deputies discovered Walton's vehicle parked at a residence on Oakes Landing Road. The deputies confirmed that Walton's truck had expired vehicle tags and that his license had been suspended. Corporal Hirtz, who was familiar with Walton and knew he lived nearby, directed Deputy Gonzalez to wait for Walton on a side street near Walton's residence.

Minutes later, the deputies observed Walton drive past. Deputy Gonzalez activated the blue lights and siren on his marked patrol vehicle and followed Walton. Walton did not accelerate or swerve but continued to drive toward his home. Deputy Gonzalez then activated a different siren tone. Walton, nevertheless, continued to drive past areas where he could stop safely.

Upon arriving at his residence, Walton exited the vehicle and appeared to steady himself on his driver's door. When deputies asked Walton to return to his vehicle, Walton ignored their requests and made incoherent statements. As deputies approached Walton, they observed that his eyes were watery and bloodshot and there was an odor of alcohol about him. Since Walton was uncooperative and making insulting statements towards the deputies, they handcuffed him and placed him in investigative detention.

Deputy Gonzalez acknowledged that his report did not contain any reference to Walton's watery and bloodshot eyes, his unsteadiness upon exiting the vehicle, or the odor of alcohol

coming from his person. Deputy Gonzalez explained that he was a new deputy at the time of the stop, and the incident with Walton was his first DUI arrest and report.

While detained, Walton shouted incoherently. Walton was so loud that the deputies were unable to communicate with each other. Consequently, Walton was placed in the patrol vehicle. While walking to the patrol car, Walton "ping-pong[ed]" between the deputies. Once Walton was secured in the patrol vehicle, deputies discovered two unopened cans of beer in the bed of Walton's truck.

While being transported to the sheriff's office, Walton asked Corporal Hirtz if he had any military service, and then stated, "I wish I was your sergeant. I would send you into war with no bullets in the gun." At the sheriff's office, Corporal Hirtz removed the handcuffs because Walton complained that they were hurting him. Walton was directed to sit calmly for a 20-minute observation period. The deputies explained that the procedure was required for their safety, Walton's own safety as he was unsteady on his feet, and the Intoxilyzer machine's sensitivity to ambient alcohol in the air.

Walton refused to sit after the handcuffs were removed. Corporal Hirtz repeatedly told Walton to sit but he refused; Walton "became more and more agitated and aggressive as he was making his statements." Because Walton "kept posturing up towards Corporal Hirtz," Deputy Gonzalez grabbed Walton's right forearm and attempted to pull him into the seat. Initially, Walton sat down but then abruptly "jumped out of the seat like he was ready to fight." Corporal Hirtz grabbed Walton's left forearm and the deputies wrestled Walton to the ground. Both Corporal Hirtz and Walton sustained minor injuries in the altercation. Eventually, the deputies managed to handcuff Walton. While waiting for paramedics, Walton told the deputies to take off the handcuffs so they "could all fight for real."

Deputy Gonzalez accompanied Walton in the ambulance to the hospital. During the transport, paramedics asked Walton how much alcohol he had that day. Walton responded, "48 ounces." Deputy Gonzalez could not recall what Walton claimed to have drunk. Upon Walton's return from the hospital, deputies read him the implied consent form. Walton replied, "Fuck you, go fuck yourself."

At the conclusion of all the evidence, the circuit court convicted Walton of the charges and sentenced him to 30 months of incarceration and a $1,000 fine. Walton appeals.

ANALYSIS

I. Procedurally Defaulted Claims

A. Unreasonable Refusal

Under Code § 18.2-268.3(A), "[i]t is unlawful for a person who is arrested for . . . [DUI] to unreasonably refuse to have samples of his breath taken for chemical tests to determine the alcohol content of his blood . . . ." On appeal, Walton asserts that his refusal to submit to breath testing was reasonable because the deputies did not explain why he could not stand during the observation period, tackled him to the ground when he refused to sit, and advised him of the implied consent law while he was waiting for paramedics. In his motions to strike the unreasonable refusal charge, however, he argued that the situation was confusing, he was not advised of the implied consent law until "hours after the fact," and "there might be some doubt whether or not he actually understood what was being read to him."

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of this contemporaneous objection requirement is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v.*

- 4 -

*Commonwealth*, 64 Va. App. 185, 195 (2015). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019).

In the trial court, Walton did not assert that it was reasonable for him to refuse the breath test. "Although Rule 5A:18 contains exceptions for good cause or to meet the ends of justice, appellant does not argue these exceptions and we will not invoke them *sua sponte*." *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010). Accordingly, Walton failed to preserve his challenge to the unreasonable refusal charge, and we do not address it on appeal.

### B. Absence of Factual Findings

Walton argues that the circuit court erred when it failed to articulate the reasons underlying its decision for the record and instead simply pronounced that it found him guilty of the remaining charges. Because Walton did not raise this argument at any point during the circuit court proceedings, he failed to preserve it for appellate review. *See* Rule 5A:18. Although there are exceptions to Rule 5A:18, Walton has not invoked them, and we do not do so sua sponte. *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023).[2]

### II. Sufficiency Claims

Walton challenges the sufficiency of the evidence to support his convictions for DUI, obstructing justice, and disregarding a law-enforcement officer's signal to stop. "When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the

---

[2] In any event, unless explicitly required by statute, there is no general requirement in Virginia that the circuit court articulate the reasons underlying its decision for the record. *See, e.g.*, *Smith v. Commonwealth*, 78 Va. App. 371, 390 n.6 (2023); *Bowman v. Commonwealth*, 290 Va. 492, 500 n.8 (2015); *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982). "The trial court is presumed to know and correctly apply the law," absent contrary evidence. *Rainey v. Rainey*, 74 Va. App. 359, 377 (2022).

trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

A.  Driving Under the Influence

Walton argues that the evidence did not support his DUI conviction. He notes that when the deputies activated their emergency lights, he did not accelerate, swerve, or drive erratically. He contends that he maintained a safe speed until arriving at his home a half mile away. He notes that the deputies did not conduct field sobriety tests and there was no camera footage of the incident. Further, he asserts that the deputy's report did not articulate any evidence of his intoxication. That evidence, he contends, was only provided at trial to "enhance the possibility of a verdict."

"It shall be unlawful for any person to drive or operate any motor vehicle. . . while such person is under the influence of alcohol[.]" Code § 18.2-266(ii). A person is under the influence

of alcohol when he "has drunk enough alcoholic beverages to observably affect his manner, disposition, speech, muscular movement, general appearance or behavior." *See Leake v. Commonwealth*, 27 Va. App. 101, 110 (1998) (applying the Code § 4.1-100 definition of intoxication to Code § 18.2-266). Without chemical testing, this element may be proved by considering "all of the evidence of [the accused's] condition at the time of the alleged offense." *Beckham v. Commonwealth*, 67 Va. App. 654, 662 (2017) (alteration in original) (quoting *Leake*, 27 Va. App. at 109).

"The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). Moreover, "[t]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000) (quoting *Fisher v. Commonwealth*, 228 Va. 296, 299 (1984)). "In all other cases, we must defer to the conclusions of 'the fact finder[,] who has the opportunity of seeing and hearing the witnesses.'" *Id.* (alteration in original) (quoting *Schneider v. Commonwealth*, 230 Va. 379, 382 (1985)).

Deputy Gonzalez's failure to articulate in his report Walton's signs of intoxication during the incident relate solely to the weight to be given his testimony by the fact finder unless it is inherently incredible as a matter of law, and Walton makes no such argument. In addition, Deputy Gonzalez's testimony about Walton's appearance and unsteadiness, as well as the strong odor of alcohol about his person, was corroborated by Corporal Hirtz's description of Walton during the stop.

Here, the deputies observed Walton driving his truck along a public highway. They attempted to initiate a traffic stop with lights and sirens, but Walton continued to drive until he reached his residence about a half mile away. Upon arriving home, Walton exited his vehicle, appeared unsteady on his feet, and utilized his door to maintain his balance. When the deputies told Walton to return to his vehicle, he ignored them and shouted incoherently. Upon approaching Walton, the deputies observed that his eyes were watery and bloodshot and that he smelled of alcohol. Once handcuffed, Walton bounced between the deputies as they guided him to the patrol vehicle. When paramedics later asked Walton how much alcohol he had consumed, he said, "48 ounces." Given the totality of the circumstances, a reasonable fact finder could conclude beyond a reasonable doubt that Walton was intoxicated while driving and that he was guilty of DUI.

## B. Obstruction of Justice

Walton appears to argue that the misdemeanor warrant of his arrest charged him with violating Code § 18.2-460(C), a Class 5 felony, instead of Code § 18.2-460(B), a misdemeanor offense. Although Walton's arrest warrant did not specify the subsection under which he was charged, the warrant itself clearly stated that it was a misdemeanor warrant. At trial, Walton did not argue that he was charged with a felony offense that should be reduced to a misdemeanor offense.[3] Instead, Walton's arguments concerned whether his conduct amounted to obstruction at all. Furthermore, when the circuit court sentenced him to a misdemeanor sentence, he did not object. Thus, the record is clear that Walton was charged and convicted for a misdemeanor violation of Code § 18.2-460(B).

_____

[3] In raising this issue for the first time on appeal, Walton seeks to invoke the "ends of justice" exception to Rule 5A:18. For the reasons stated, we need not address the application of this exception.

Walton also argues that the evidence was insufficient to prove that he obstructed the deputies from performing their duty in violation of Code § 18.2-460(B). Relying on our decision in *Ruckman v. Commonwealth*, 28 Va. App. 428 (1998), he contends that there is no evidence that he threatened the deputies or used force to prevent them from performing their duties. Further, he argues that when he said that he did not want to sit for the observational period, they should have "read him the refusal form and deemed that he refused." Walton claims that by standing, and refusing to sit, he did not obstruct the deputies' duty to read the implied consent law. He asserts that although he "made derogatory remarks and did not want to sit down," he merely frustrated the breath test process.

Walton's reliance on *Ruckman* is misplaced. Under Code § 18.2-460(B), a person is guilty of obstructing justice if he, "by threats or force, knowingly attempts to intimidate or impede a . . . law-enforcement officer . . . lawfully engaged in his duties as such[.]" "To sustain a conviction under Code § 18.2-460(B), on the intent requirement, it is the 'intent to impede a police officer in the performance of his duties that is the gravamen of the statute.'" *Hamilton v. Commonwealth*, 69 Va. App. 176, 196 (2018) (quoting *Woodson v. Commonwealth*, 14 Va. App. 787, 795 (1992)). "This intent may be shown by the appellant's statements or conduct." *Id.* "As to the requirement of force, the term has been defined under Code § 18.2-460(B) as '[p]ower, violence, or pressure directed against a person or thing.'" *Id.* (alteration in original) (quoting *Bennett v. Commonwealth*, No. 2029-08-2, slip op. at 4 (Va. Ct. App. Dec. 22, 2009)).

At the sheriff's office, deputies directed Walton to calmly sit in a chair so that they could observe him for 20 minutes before he used the Intoxilyzer machine. Walton refused to stay seated but eventually calmed enough to sit down. Moments later, Walton abruptly stood up and advanced forward appearing ready to fight Corporal Hirtz. The deputies wrestled Walton to the ground. Both Walton and Corporal Hirtz were injured in the scuffle. After being evaluated at

the hospital, Walton returned to the sheriff's office several hours later and Corporal Hirtz then read the implied consent law to Walton.

Walton's conduct prior to his refusal of the breath test caused Deputy Gonzalez and Corporal Hirtz to engage in a scuffle with him in the sheriff's office. Walton's conduct clearly illustrated his intention to prevent the deputies from performing their duty to administer the breath test. Considering the totality of the evidence, a reasonable fact finder could conclude beyond a reasonable doubt that Walton attempted to impede the deputies while they were lawfully engaged in their duties and that he was guilty of obstruction of justice under Code § 18.2-460(B).

### C. Disregarding a Law-Enforcement Command to Stop

Challenging his conviction for disregarding a law-enforcement officer's command to stop his vehicle, Walton argues that he did not willfully and wantonly disregard the deputies' signal. He notes that he did not accelerate away from the deputies, did not swerve or violate any traffic laws, and he drove a mere half mile before stopping at his home. Thus, he contends, there was no pursuit and no evidence that his behavior was wanton.

"Any person who, having received a visible or audible signal from any law-enforcement officer to bring his motor vehicle to a stop, drives such motor vehicle in a willful and wanton disregard of such signal . . . is guilty of a Class 2 misdemeanor." Code § 46.2-817(A).

After confirming that Walton was in fact driving the truck and his license was suspended, Deputy Gonzalez activated the emergency lights and sirens of the marked patrol car. Walton did not respond to the signals and continued to drive. Consequently, Deputy Gonzalez switched to a different siren. Walton, however, continued to drive until he reached his destination. Deputy Gonzalez noted that there were several opportunities along the half mile drive for Walton to stop safely. Based on the totality of the circumstances, a reasonable fact finder could conclude that

- 10 -

Walton willfully and wantonly disregarded a law enforcement command to stop and that he was guilty of violating Code § 46.2-817(A).

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*