COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Decker and AtLee
Argued at Richmond, Virginia

**PUBLISHED**

ERIC HAMILTON

v.     Record No. 0814-17-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE RANDOLPH A. BEALES
AUGUST 7, 2018

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Phillip L. Hairston, Judge

Lauren Whitley, Deputy Public Defender, for appellant.

John I. Jones, IV, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Eric Hamilton ("appellant") was indicted for obstruction of justice under Code

§ 18.2-460(A).[1] On April 18, 2017, a jury found appellant guilty of "obstructing justice as

charged in the indictment." On appeal, appellant raises three assignment of error. He argues that

the trial court erred in denying his <u>Batson</u> motion; erred in denying both his "motion to strike and

renewed motion to strike as the Commonwealth did not prove the required elements under Code

§ 18.2-460, including intent or the prohibited act"; and erred in "instructing the jury on the

elements of Va. Code § 18.2-460(B) and providing an ambiguous verdict form when

Mr. Hamilton was indicted and pled not guilty to a violation of Code § 18.2-460(A)."[2]

---

[1] Appellant was also indicted for strangulation and assault and battery of a family
member; however, the Commonwealth moved to *nolle prosequi* those other charges at the
beginning of appellant's trial because the victim, appellant's girlfriend, did not appear for trial.

[2] The offenses described under subpart (A) and subpart (B) of Code § 18.2-460 are both
classified as Class 1 misdemeanors.

I.  BACKGROUND

A.  Jury Selection

During jury selection before appellant's trial, the prosecutor asked the jury pool if anyone

had ever been a victim of a crime, a witness to a crime, or charged with a crime.  The question

elicited affirmative responses from some of the jurors, including Juror T.W., an

African-American woman, and Juror S., a Caucasian woman.[3]  The following conversation

ensued between the prosecutor and Juror T.W.:

> MR. HITTLE:  Ma'am, were you charged, were you a witness, or
> were you a victim?
>
> MS. T.W.:  Charged.
>
> MR. HITTLE:  Charged.  And do you feel that throughout that
> process you were treated fairly and that the case was adequately
> handled by the court system?
>
> MS. T.W.:  Yes.

The prosecutor then engaged in the following exchange with Juror S.:

> MR. HITTLE:  Okay.  And, ma'am, can you tell me what the
> situation was that caused you to raise your hand?
>
> MS. S.:  Well, I've had three.
>
> MR. HITTLE:  Okay.  Well, I don't want to separate all three
> instances out, so overall, given those experiences, do you feel that
> you were treated fairly by the court system and that the court
> system adequately handled the process?
>
> MS. S.:  Yes.

During appellant's turn to *voir dire* the jury, his counsel asked if any member of the jury

pool "ever had a job that involves investigation?  So that might be an insurance job."  Juror S.

---

[3] Because a portion of the *voir dire* dealt with these prospective jurors' previous
interactions with the criminal justice system, we have referred to these particular members of the
venire by their initials in an effort to protect their privacy.

responded affirmatively, stating, "I do insurance now. I am a team lead so I do have to do some investigations on claims."

Following *voir dire*, after the prosecutor and defense counsel each exercised four peremptory strikes, the fifteen-member pool of potential jurors was reduced to a final jury of seven members to try this misdemeanor offense. The Commonwealth struck Jurors Green and T.W., two African-American women; Juror Holmes, a Caucasian man; and Juror Cooper, an African-American man. Defense counsel used her four peremptory strikes to eliminate four Caucasian individuals – Juror Ogburn, a Caucasian man, and Juror Barden, Juror McCartney, and Juror S., all Caucasian women. The seven-member jury that then heard the case consisted of two African-American members, Jurors Moss and Broadnax, and five members who were not African-American, Jurors Jordan, Worcester, Cousins, Keevil, and Orland.

Following the Commonwealth's peremptory strikes, appellant's counsel made a challenge pursuant to Batson v. Kentucky, 476 U.S. 79 (1986), arguing that the Commonwealth was seeking to exclude three African-American members of the venire based on their race. In response, the prosecutor argued that Juror T.W. was struck because she had previously been charged with a crime and because she indicated on a survey provided by the trial court that she was unemployed. The prosecutor contended that Juror Green was struck because she also indicated on the survey that she was unemployed. The prosecutor explained, "Ms. [T.W.] . . . indicated previously that she had been charged with a crime. She also indicated on her survey that we were provided by the Court that she was unemployed as did Ms. Green who was another one of the individuals that was struck by the Commonwealth." The prosecutor also stated that, with regard to Juror Green, he had no information about her past employment, and he "noticed on several occasions that [she] did not audibly respond to many of the questions, and [he] was concerned about her attention essentially to the case."

- 3 -

With respect to Juror Cooper, the prosecutor argued,

> He did not answer any of the questions. I really didn't have much information as to him. I think going down the line, the jurors that remained on the panel, Mr. Moss, Mr. Worcester, Mr. Keevil, all gave answers to some questions and I had additional information about them which I did not have from Mr. Cooper.

After the Commonwealth offered these explanations, the trial court asked for additional argument from appellant's counsel. Appellant's counsel argued that the Commonwealth's explanation that two of the jurors were unemployed was insufficient because "[t]here has been case law that says because someone lives in a certain neighborhood or because someone is unemployed is just a code word for saying that they're African-American and for striking them." Appellant's counsel also argued that there were other individuals on the panel "who also didn't speak." She claimed, "Ms. Orland didn't speak very much. Mr. Moss didn't speak very much. Ms. Jordan in the front row didn't say many things."

After hearing from both sides, the trial court concluded that it was "satisfied that there was a race-neutral basis for [the prosecutor's] strikes." The trial judge further commented, "I also had an opportunity to observe the jurors and in particular Ms. [T.W.] when she spoke of her former criminal charge. And with the other jurors, I'm satisfied that [the prosecutor] has offered a race-neutral basis for his strikes." The trial judge ultimately found that "[the prosecutor] has done nothing improper in striking those jurors." The trial then proceeded on the indictment.

## B. Trial

Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court, Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), the evidence before the trial court established that early in the morning on October 20, 2016, Officers Henning, Owens, and Robinson from the City of Richmond Police Department arrived at appellant's address in response to a call they received from appellant's

- 4 -

girlfriend regarding an alleged domestic assault. She told the officers that she lived at the address, provided them with a key, and gave them permission to enter. She informed them that appellant was inside the residence.

A video from Officer Henning's body camera was admitted into evidence and played for the jury at trial, displaying the events that occurred at the residence. The video shows that the officers knocked on the door of the residence and announced their presence.[4] When no one answered, they entered using the key provided by appellant's girlfriend. After they announced themselves and then entered, appellant asked who was there, and the officers responded that it was the Richmond Police and that they needed to see appellant's hands. Officer Henning testified that his badge was displayed. When appellant asked why they were there, the officers told him that they were there for an investigation. Appellant was positioned down a hallway from the officers – near a doorway to a separate room. Officer Henning testified that it was dark in the residence, requiring him to use a flashlight to see. The officers repeatedly directed appellant to step out into the main room and show them his hands, but he refused to comply with their instructions. Twice during the exchange, instead of following instructions, appellant stated, "Shoot me, then" and "Shoot me."

Appellant, who continued to refuse to come forward into the main room, asked if he could put on a shirt. The officers explicitly told him that he could not. Officer Henning testified that appellant's request was denied for the officers' safety because he believed it would have required appellant to go into the back bedroom where he could have potentially retrieved a weapon. During this exchange appellant stated, "He's going to pull a gun on me," referring to Officer Henning. Officer Henning showed appellant his hands, free of a firearm. Despite

---

[4] Officer Robinson initially went to the rear of the residence, but at some point joined Officers Henning and Owens inside.

Officer Henning's showing appellant that he was not holding his firearm, appellant continued to ignore the officers' instructions, moving toward the bedroom because he claimed he wanted to put on a shirt. Officer Henning moved into the hallway, closer to appellant, and repeatedly told appellant to show him his hands. Appellant stated, "I don't care. Shoot me. I don't care," and retreated into the back bedroom. Appellant forcefully pushed on the door to close it as the officers pushed inward to keep it open. When appellant succeeded in forcing the door shut, Officer Henning and Officer Robinson then kicked it down.

After the door was knocked down, appellant did not immediately comply with the officers' commands that he step out into the main room. When appellant eventually came out and sat in a chair, Officer Henning attempted to handcuff him. The officers repeatedly told appellant to place his hands behind his back, but appellant refused to comply. Officer Henning testified, "He kept pulling his arms together. We were using all of our strength." Officer Robinson testified that, as they attempted to handcuff him, appellant "was trying to resist as best he could." The body camera video shows that it took the efforts of all three officers on the scene to get appellant subdued and handcuffed.

### C. Jury Instructions

Prior to submitting the case to the jury, counsel for appellant and the Commonwealth agreed to eleven jury instructions. One of these agreed-upon instructions stated, in relevant part:

> Instruction 10: The defendant is charged with the crime of obstructing justice. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime: One, that the defendant by threat or force; two, knowingly attempted to impede a law enforcement officer; three, while the law enforcement officer was lawfully engaged in duties as a law enforcement officer.

The instruction reflects the elements of a violation of Code § 18.2-460(B) – rather than of § 18.2-460(A), the subsection under which appellant was indicted. The jury returned a verdict

- 6 -

form finding that appellant was guilty of "obstructing justice as charged in the indictment," and this appeal followed.

## II. ANALYSIS

### A. Appellant's Batson Challenge

In Batson v. Kentucky, the U.S. Supreme Court held that purposeful exclusion of potential jurors from the venire on the basis of race is unconstitutional because it violates the Equal Protection Clause of the Fourteenth Amendment. Batson v. Kentucky, 476 U.S. 79 (1986).

> [T]he State's privilege to strike individual jurors through peremptory challenges, is subject to the commands of the Equal Protection Clause. Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges "for any reason at all, as long as that reason is related to his view concerning the outcome" of the case to be tried, the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant.

Id. at 89.

When a party makes a Batson challenge, the Supreme Court of Virginia has stated, "[T]he trial court must consider the basis of the challenges, the reasons proffered for the strikes, and any argument presented that such reasons, even if race-neutral, are pretextual, to determine whether the challenger has met his burden of proving purposeful discrimination in the selection of a jury panel." Chandler v. Commonwealth, 249 Va. 270, 277, 455 S.E.2d 219, 223 (1995). Our Supreme Court has further articulated the process for analyzing a Batson challenge to determine if a strike was discriminatory.

> The defendant must make a *prima facie* showing that the prosecutor has exercised peremptory strikes on the basis of race. If this showing is made, the burden shifts to the prosecutor to articulate a racially neutral explanation for striking the jurors in question. If the court determines that the proffered reasons are

race-neutral, the defendant should be afforded an opportunity to show why the reasons, even though facially race-neutral, are merely pretextual and that the challenged strikes were based on race. But, ultimately, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

James v. Commonwealth, 247 Va. 459, 461-62, 442 S.E.2d 396, 398 (1994) (internal citations omitted). "On appeal, the trial court's findings will not be reversed unless they are clearly erroneous." Id.

### 1. Juror T.W.

Appellant argues that he made a *prima facie* case of purposeful discrimination as to Juror T.W. and that the Commonwealth failed to offer a race-neutral explanation for the strike because Juror S., a Caucasian juror, also indicated that she was the victim of a crime, the witness of a crime, or charged with a crime. Appellant argues that the Commonwealth was required to follow up with Juror S.'s response and determine if Juror S., like T.W., had also been charged with a crime.

Although the trial court did not expressly rule that appellant made a *prima facie* case that the Commonwealth's strikes were made on the basis of race, the trial court implicitly made this finding when it directed the Commonwealth to provide a race-neutral reason for the strike of T.W. Hopkins v. Commonwealth, 53 Va. App. 394, 398, 672 S.E.2d 890, 892 (2009) ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a *prima facie* showing becomes moot.") (quoting Hernandez v. New York, 500 U.S. 352, 359 (1991) (plurality opinion))).

The Commonwealth then offered two reasons for striking Juror T.W. – the fact that she had been charged with a crime and the fact that she was unemployed – which were sufficient to satisfy the second step of the Batson analysis. See Hernandez, 500 U.S. at 360 ("At this step of

the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.").[5] Therefore, the issue before this Court is the third step of the analysis – whether, after the prosecutor offered race-neutral reasons for the strike, appellant "nevertheless show[ed] purposeful discrimination by proving the explanations pretextual." United States v. Joe, 928 F.2d 99, 102 (4th Cir. 1991).

Appellant was given the opportunity to respond to the prosecutor and to argue to the trial judge that the reasons were pretextual because they applied equally to a Caucasian juror. However, appellant never argued to the trial judge that the Commonwealth's reasons for striking Juror T.W. applied equally to Juror S. Because appellant never made that argument to the trial court, this Court cannot consider it on appeal. Rule 5A:18; see also Buck v. Commonwealth, 247 Va. 449, 443 S.E.2d 414 (1994) (not considering Buck's argument on appeal that the Commonwealth's incorrect reading of the jury list at trial showed that the Commonwealth's strikes were pretextual because, to do so, would have been an "'independent' or 'de novo' review" as the jury list was not admitted as evidence in the trial court) (citing Hernandez, 500 U.S. at 367)).[6]

---

[5] Despite the argument of appellant's trial counsel that "'unemployed' is just a code word for saying that they're African American," this Court has previously held that unemployment can be a race-neutral basis for a peremptory strike. Goodson v. Commonwealth, 22 Va. App. 61, 82, 467 S.E.2d 848, 858 (1996) (holding prosecutor's strike of juror based on her young age and unemployment "satisfied the race-neutral standard.")

[6] We also note that the trial court was under no obligation to review the *voir dire* or juror surveys in order to determine if there was a similarly situated Caucasian juror who was not struck – absent an argument from defense counsel at trial. In Buck v. Commonwealth, the Supreme Court declined to consider Buck's argument that the jury list would have illustrated that the Commonwealth's reasons for striking jurors were inconsistently applied because Buck never presented the list to the trial court for its consideration. 247 Va. at 453, 443 S.E.2 at 416. The Court stated, ". . . Buck's position requires a trial court to seek out and evaluate information or evidence not utilized by either party. Buck has not cited, and we cannot find, any case that places such a burden upon the trial court in the absence of defense counsel's identification of a

Appellant also failed to preserve his argument that the prosecutor was required to ask the jurors additional questions in order to learn more information about them. These arguments were not made before the trial court and, thus, were not preserved for this Court's review on appeal. Rule 5A:18; see also Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*) ("Making one specific argument on an issue does not preserve a separate legal point on the same issue for review."). Therefore, because appellant failed to make these specific arguments to the trial court and failed to give the trial judge the opportunity to rule intelligently on them, we do not consider them now on appeal.

### 2. Juror Cooper and Juror Green

Similar to the analysis regarding Juror T.W., the issue before this Court with respect to Jurors Cooper and Green is focused on the third step of the Batson analysis. The prosecutor's proffered reason for the strike of Juror Cooper was that he did not answer any questions and the prosecutor did not have much information on him. On appeal, appellant argues that there were similarly situated Caucasian jurors who also did not speak during *voir dire*, including Jurors Orland and Jordan. However, before the trial court, defense counsel only argued that there were other individuals on the panel "who also didn't speak. Ms. Orland didn't speak *very much*. Mr. Moss didn't speak *very much*. Ms. Jordan in the front row *didn't say many things*." (Emphasis added). Appellant did not specifically identify for the trial court any non-African-American juror that did not answer *any* questions. Even assuming without deciding that these statements were sufficient to preserve this argument for this Court's review, the record before us does not allow us to conclude that the trial court's finding was clearly erroneous.

_____

false or pretextual reason for the peremptory strikes." Id. The Court concluded that "[a]doption of Buck's theory would relieve the defense of the burden placed on him by the Supreme Court in Batson, i.e., proving that the prosecution engaged in purposeful discrimination, and would place that burden on the trial court." Id.

Many of the questions asked by the prosecutor and by appellant's counsel solicited non-verbal responses from the jury or responses which could only be observed by witnessing the *voir dire* proceedings in person. The trial judge had the opportunity to observe the jurors regarding these responses, which an appellate court is, of course, not able to do. Both this Court and the Supreme Court have stated, "Indeed, '[t]he living record contains many guideposts to the truth which are not in the printed record,' and an appellate court, not having the benefit of these guideposts, 'should give great weight to the conclusions of those who have seen and heard them.'" Dalton v. Commonwealth, 64 Va. App. 512, 526, 769 S.E.2d 698, 705 (2015) (quoting Bradley v. Commonwealth, 196 Va. 1126, 1136, 86 S.E.2d 828, 834 (1955)). For example, appellant's counsel asked the venire members if they thought it was "a fair statement that most of the time police officers try to tell the truth." The record indicates that, in response, "[s]ome jurors nodded their heads up and down," but it does not identify which jurors gave this response. At another point during the *voir dire*, appellant's counsel asked if any of the jurors had experienced someone walking into their home and startling them, and the transcript shows that the question elicited "[a]ffirmative *responses*." (Emphasis added). However, appellant's counsel only followed up with one potential juror on this question. Thus, although the printed record before us indicates that Jurors Orland and Jordan did not give individual, verbal responses, the record does not indicate that they did not answer *any* questions such that the prosecutor could not have had additional information about them. Therefore, we defer to the trial court's conclusion based on the trial judge's ability to observe the potential jurors and to observe the proceedings involving the *voir dire* of the venire.[7]

---

[7] As the prosecutor stated when explaining his peremptory strikes for Juror T.W. and Juror Green, the jurors were provided with surveys in which they were asked to provide information about themselves to counsel. The prosecutor relied on the answers to those surveys when making his strikes. In addition, the prosecutor also explained that his reasons for striking Juror Green were based, in part, on the lack of information provided in that survey. When asked

For similar reasons, we defer to the trial judge's acceptance of the Commonwealth's reasoning for its strike of Juror Green based on his ability to observe both the proceedings and the prosecutor. The prosecutor stated, " . . . I noticed on several occasions that [Juror Green] did not audibly respond to many of the questions, and I was concerned about her attention essentially to the case." The trial judge, unlike this Court on appeal, had the opportunity to observe Juror Green's demeanor during the course of the *voir dire*, and he was in the best position to assess this challenge. See Goodson, 22 Va. App. at 81, 467 S.E.2d 848 at 858 (recognizing that a juror's demeanor may constitute a race-neutral reason for a peremptory strike). Therefore, we cannot conclude that the trial court's acceptance of the Commonwealth's proffered reason was clearly erroneous.

Furthermore, the trial court was in the best position to determine the credibility of the prosecutor and his offered reasons for striking Jurors Cooper and Green. "In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge." Hernandez, 500 U.S. at 365. This "evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" Id. (quoting Wainwright v. Witt, 469 U.S. 412, 428 (1985)). After evaluating the prosecutor and his arguments, the trial judge ruled that he was "satisfied that there was a race-neutral basis for [the

---

about his reasons for striking Juror Cooper, the prosecutor explained that "[s]imilar to Ms. Green . . . I really didn't have much information as to him." We note that appellant did not include the jurors' responses to their jury surveys in the joint appendix or elsewhere in the record of this case. Therefore, we cannot verify, for example, whether the prosecutor lacked similar information from Juror Cooper or Juror Green that he had obtained from the other jurors. See Salahuddin v. Commonwealth, 67 Va. App. 190, 213, 795 S.E.2d 472, 484 (2017) ("[T]he appellant 'has the burden to preserve an adequate record on appeal to allow [the appellate court] to consider the propriety of the trial court's actions.'" (quoting Davis v. Commonwealth, 35 Va. App. 533, 537, 546 S.E.2d 252, 254 (2001))).

prosecutor's] strikes." As an appellate court, we "cannot on the basis of a cold record easily second-guess a trial judge's decision about likely motivation." Davis v. Ayala, 135 S. Ct. 2187, 2201 (2015) (quoting Rice v. Collins, 546 U.S. 333, 343 (2006) (Breyer, J., concurring)). Therefore, we defer to the trial court's evaluation of the prosecutor's credibility and his offered reasons for striking Jurors Cooper and Green. As the Supreme Court of Virginia stated in James, "Ultimately, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination," and, consequently, for all of these reasons, we find that the trial court did not err. 247 Va. at 462, 442 S.E.2d at 398.

### B. Jury Instruction 10

Appellant argues that the trial court erred when it gave Jury Instruction 10 because the instruction contains the elements of Code § 18.2-460(B) rather than of Code § 18.2-460(A), the subsection under which appellant was indicted. We affirm the trial court on this assignment of error because appellant failed to preserve this issue below.[8] See Rule 5A:18. Furthermore, we find that the ends-of-justice exception does not apply in this case because the appellant, together with the Commonwealth, requested that this exact jury instruction be given.

This Court addressed a similar issue in Alford v. Commonwealth, 56 Va. App. 706, 696 S.E.2d 266 (2010). In Alford, the defendant was indicted for attempted rape. Id. at 708, 696 S.E.2d at 267. At trial, the Commonwealth and the defendant's counsel agreed to jury instructions on attempted rape and assault and battery. Id. After the defendant was convicted of

---

[8] In his brief before this Court, appellant argues that his trial counsel clarified for the trial court that appellant was charged under Code § 18.2-460(A). However, that "clarification" came immediately following defense counsel's motion to strike, based partially on her contention that the Commonwealth had failed to show that appellant used threats or force to obstruct the officers. Threat or force is an element of Code §18.2-460(B) – not of Code § 18.2-460(A). Therefore, it appears that defense counsel incorrectly believed that she was addressing the elements of Code § 18.2-460(A). The record reveals that she never alerted the trial court to any error in the jury instructions or the elements now at issue on appeal.

- 13 -

assault and battery, he appealed, arguing that the trial court erred in giving the instruction because assault and battery was not a lesser-included offense of attempted rape.

This Court held that it need not address the defendant's argument because the defendant invited the error by agreeing to the jury instruction and because the ends-of-justice exception did not apply. Id. at 709, 696 S.E.2d at 267. The Court noted that, although it would employ the exception in cases where a defendant is convicted "'for conduct that was not a criminal offense' – that is, when the absence of a proper jury instruction *and* proof of an essential element makes it a legal impossibility for defendant to have committed a crime" – those were not the circumstances of the defendant's case. Id. at 710, 696 S.E.2d at 268 (quoting Brittle v. Commonwealth, 54 Va. App. 505, 514, 680 S.E.2d 335, 340 (2009)). In refusing to apply the exception, the Court concluded that "[t]he very fact that Alford 'invited the error' (by agreeing that assault and battery jury instruction should be given) renders Rule 5A:18's ends-of-justice exception inapplicable." Id. at 709, 696 S.E.2d at 267-68.

In the case before us, appellant was not convicted for conduct that was not a criminal offense. Instead, appellant was found guilty by a jury based on evidence of his violation of the misdemeanor offense of obstruction of justice. Although the evidence against appellant resulted in a guilty verdict under a different subsection of the statute (Code § 18.2-460(B) as opposed to Code § 18.2-460(A)), this occurred after appellant agreed to a jury instruction containing the elements of that subsection – and not thereafter raising a timely objection to the trial court. As in Alford, because appellant invited the error he now raises on appeal by agreeing to the given jury instruction, Rule 5A:18's ends-of-justice exception is inapplicable and we do not address appellant's argument on the merits.

Furthermore, we decline to apply the ends-of-justice exception based on appellant's contention that his right to a unanimous jury verdict was violated by the trial court's giving the

challenged instruction or by the verdict form provided to the jury. To find as appellant suggests would require this Court to speculate that the jurors were confused by the agreed-upon jury instruction. Contrary to appellant's argument, it is well settled that "[a] jury is presumed to have followed the instructions of the trial court." Jordan v. Commonwealth, 50 Va. App. 322, 329, 649 S.E.2d 709, 713 (2007) (quoting Muhammad v. Commonwealth, 269 Va. 451, 524, 619 S.E.2d 16, 58 (2005)). Also contrary to appellant's position, the record that is before this Court on appeal, which we must view in the light most favorable to the Commonwealth as the party that prevailed below, Riner, 268 Va. at 330, 601 S.E.2d at 574, shows that the jury was polled and each member affirmed their verdict that appellant was guilty of obstructing justice. In short, viewing the record as we must on appeal, it is certainly not apparent to this Court that the jury was confused or convicted appellant of a non-offense, and therefore, the ends-of-justice exception is not applicable here. See Redman v. Commonwealth, 25 Va. App. 215, 221-22, 487 S.E.2d 269, 273 (1997) ("[T]o show that a miscarriage of justice *has* occurred, thereby invoking the ends of justice exception, the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur.")

### C. Sufficiency of the Evidence

Appellant challenges the sufficiency of the evidence to support his conviction. When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner, 268 Va. at 330, 601 S.E.2d at 574, "[w]e must instead ask whether '*any* rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt.'" Crowder, 41

Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584

S.E.2d 444, 447 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of

the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw

reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

Because both parties agreed to the jury instruction reciting the elements of Code

§ 18.2-460(B), it became the law of the case and it is binding on this Court on appeal. See

Owens-Illinois, Inc. v. Thomas Baker Real Estate, Ltd., 237 Va. 649, 652, 379 S.E.2d 344, 346

(1989) ("It is well settled that instructions given without objection become the law of the case

and thereby bind the parties in the trial court and this Court on review."). Thus, we review

appellant's assignment of error on the sufficiency of the evidence to determine whether the

evidence was sufficient to convict him of misdemeanor obstruction of justice under Code

§ 18.2-460(B).

Appellant argues that the evidence was insufficient to prove that he knowingly attempted

to impede the officers and that he used threat or force. To sustain a conviction under Code

§ 18.2-460(B), on the intent requirement, it is the "intent to impede a police officer in the

performance of his duties that is the gravamen of the statute." Woodson v. Commonwealth, 14

Va. App. 787, 795, 421 S.E.2d 1, 6 (1992). This intent may be shown by the appellant's

statements or conduct. Id. (citing Polk v. Commonwealth, 4 Va. App. 590, 595, 358 S.E.2d 770,

773 (1987)). As to the requirement of force, the term has been defined under Code

§ 18.2-460(B) as "[p]ower, violence, or pressure directed against a person or thing." Bennett v.

Commonwealth, No. 2029-08-2, 2009 Va. App. LEXIS 566, at *6-7 (Dec. 22, 2009) (quoting

Jordan v. Commonwealth, 273 Va. 639, 648, 643 S.E.2d 166, 171-72 (2007)).

The evidence in this case clearly shows that appellant knowingly attempted to impede the officers by the use of force. When the officers arrived inside appellant's residence, they made it clear to appellant that they were the Richmond Police. Officer Henning also testified that his badge was displayed. Despite identifying themselves as officers and informing appellant that they were there to conduct an investigation, appellant ignored their repeated directives to step into the main room. As he ignored their commands, appellant stated, "I don't care. Shoot me" – clearly illustrating his intention to prevent the officers from performing their investigation. Contrary to the officers' commands, appellant then moved into the back bedroom and used force against the officers when he pushed the door closed while the officers pushed to keep the door open from the other side. Because appellant succeeded in barricading himself in the bedroom, the officers had to kick down the door to continue their investigation while potentially putting themselves at risk if appellant had retrieved a weapon or shot at them through the closed door.[9]

Given the totality of the circumstances here, we cannot say that no rational factfinder could have found appellant guilty of obstruction of justice. Therefore, we find no error in the jury's finding of guilt.[10]

---

[9] Appellant used force a second time to impede the officers when he forcefully pulled his arms together as the officers tried to handcuff him. Officer Robinson testified that appellant "was trying to resist as best he could," and the video shows that it took all three of the officers to subdue and handcuff appellant because of his resistance. Officer Henning testified that the officers "were using all of [their] strength" in order to handcuff appellant.

[10] Even under the statute's subsection A, the charge under the indictment, we note that the evidence was clearly sufficient to support such a conviction. That subsection states, "If any person without just cause knowingly obstructs . . . any law-enforcement officer . . . in the performance of his duties as such or fails or refuses without just cause to cease such obstruction when requested to do so . . . he shall be guilty of a Class 1 misdemeanor." Code § 18.2-460(A). Here, appellant was aware that the law enforcement officers were investigating an alleged crime. However, without cause, he ignored the officers' numerous and repeated commands (which were designed to protect the safety of both the officers and appellant) by entering a back bedroom, by forcing the door to it closed, and by essentially attempting to barricade himself in it.

III. CONCLUSION

In short, with respect to the Batson challenge to the peremptory strikes of Jurors Cooper and Green, the record before us does not show that the prosecutor's reasons for striking these jurors were pretextual, and we must defer to the trial judge's actual observation of the potential jurors during *voir dire* and his assessment of the prosecutor's credibility during argument. Giving that proper deference to the trial judge's actual observations and assessments, we find no error in the trial court's denial of appellant's Batson challenge to the peremptory strikes of Jurors Cooper and Green. Furthermore, appellant's argument on appeal challenging the peremptory strike of Juror T.W. (i.e., that Juror S. was a Caucasian juror to whom the Commonwealth's reasons for striking Juror T.W. also applied) was not made in the trial court, and, therefore, is not preserved for appeal.

We find that appellant also failed to preserve his argument that the trial court erred in instructing the jury on the elements of obstruction of justice contained in Code § 18.2-460(B) rather than in Code § 18.2-460(A). In addition, we find that the ends-of-justice exception does not apply because appellant agreed to the jury instruction containing the elements of Code § 18.2-460(B).

Finally, we hold that the evidence was sufficient for a rational factfinder to convict appellant of obstruction of justice. Appellant, who was aware that the officers were in his home to conduct an investigation, ignored the officers' orders to him and used force to close a door to prevent the officers from entering a back bedroom, where appellant was attempting to barricade himself. Appellant's actions required the officers to kick down the door to the bedroom in order to proceed with their investigation. These actions were sufficient by themselves for a rational factfinder to convict appellant of obstruction of justice. In addition, however, appellant then continued to obstruct the officers in their duties when he continued to pull his arms together so

forcefully that he, for a while, prevented the officers from handcuffing him.  In short, based on the totality of the circumstances, we certainly cannot say that no rational factfinder could have found appellant guilty of obstruction of justice.  Consequently, for all of these reasons, we affirm appellant's conviction.

Affirmed.