COURT OF APPEALS OF VIRGINIA

Present:   Judges Athey, Ortiz and Chaney
Argued at Norfolk, Virginia


DESTINI N'DIA TRANAY WRIGHT

                                                        MEMORANDUM OPINION* BY
v.        Record No. 0228-23-1                     JUDGE CLIFFORD L. ATHEY, JR.
                                                            AUGUST 13, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Rufus A. Banks, Jr., Judge

Brett P. Blobaum, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Angelique Rogers, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


On January 5, 2023, a jury empaneled in the Circuit Court of the City of Chesapeake

("trial court") convicted Destini Wright ("Wright") of obstructing justice in violation of Code

§ 18.2-460.  Following a sentencing hearing, the trial court sentenced Wright to 90 days in jail,

all suspended.[1]  Wright assigns error to the trial court for denying her motion to strike a juror for

cause, and for determining that the evidence of force and intent was sufficient for the jury to

convict Wright of obstructing a law enforcement officer.  Since we find that the trial court erred

in determining the evidence sufficient to convict Wright, we reverse her conviction and dismiss

this matter.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The trial court also convicted Wright of failing to identify herself to a law enforcement
officer, a violation of the City of Chesapeake Code of Ordinance § 46-209 and sentenced her to
an additional 90 days in jail.  We previously dismissed Wright's appeal of that conviction
because Wright failed to join an indispensable party.  *See Wright v. Commonwealth*, No.
0228-23-1 (Va. Ct. App. Aug. 1, 2023) (order).

I. BACKGROUND[2]

While on patrol in the City of Chesapeake during the night of December 17, 2021, Chesapeake Police Officer A.R. Weeks ("Officer Weeks") executed a traffic stop of a vehicle driven by Wright because Wright failed to properly display her vehicle license plates. When exiting his police cruiser, Officer Weeks activated his body camera to record the encounter.[3] Officer Weeks then approached the passenger's side of Wright's vehicle and tapped on the passenger's side window. Officer Weeks subsequently identified himself before explaining to Wright that he had pulled her vehicle over as a result of the vehicle lacking vehicle license plates.

Officer Weeks then requested Wright's identification twice, but Wright refused to provide it. In response, Officer Weeks walked around to the driver's side of Wright's vehicle and ordered her multiple times to exit the vehicle to no avail. After failing to follow Officer Weeks's instruction, Wright next requested to speak with Officer Weeks's supervisor. Shortly thereafter, Chesapeake Police Sergeant Jonathan Mills ("Sergeant Mills") and another Chesapeake police sergeant, who had been patrolling the area together, stopped to assist Officer Weeks. Witnessing Wright's refusal to comply with Officer Weeks's request that she exit the vehicle, Sergeant Mills and his fellow sergeant approached the passenger's side of Wright's

_____

[2] "Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[3] This video evidence was entered as an exhibit by the Commonwealth and played for the jury.

vehicle and requested that she roll down the passenger side window so that they could speak with her.

Wright refused to roll the passenger window down after repeated requests, so the officers eventually walked around Wright's vehicle and attempted to speak with her through the driver's side window even though the sergeants were near oncoming vehicular traffic. All three law enforcement officers again requested that Wright exit her vehicle for purposes of both her safety and their safety, but Wright continued to refuse to exit the vehicle. Officer Weeks then deployed spikes around Wright's vehicle to prevent her from fleeing. Wright continued to question the officers' authority to order her to exit her vehicle and continued to refuse to exit her vehicle. The officers then finally informed her that "if you refuse to exit the car, we're gonna get you out of the car. If you decide to take off from the traffic stop, we have spike strips in front of your tires, and they're going to flatten your tires. And, we're going to pursue you."

Despite their warning, Wright continued to argue with the officers about whether they had the authority to order her to leave her vehicle. In response, she was advised again that she was being ordered to exit the vehicle for reasons of officer safety, in part, because the window tint on her car was "dark," making it difficult to see within the vehicle. The officers also explained that the driver's door needed to be opened because they needed "to get the VIN off the door frame to run your car" to identify its ownership. Wright again refused to exit the vehicle. Wright was then warned one last time: "you can get out of the car, or we can get you out of the car, it is up to you." Finally, over six minutes after Officer Weeks first ordered Wright to exit the vehicle, she complied by exiting the driver's side of the vehicle. While exiting, Wright locked all the vehicle's doors with her key fob thus preventing the officers from seeing into the interior of the vehicle. Upon further request, Wright walked over into the area directly in front of Officer Weeks's patrol car where she advised the officers that the vehicle she was driving was

her personal vehicle and registered in her name. Officer Weeks's body-worn camera footage then shows another officer retrieving the VIN number for Wright's car from a plate on the front interior dash of the vehicle. That officer then informed Officer Weeks that he would "run it."

Wright then provided her first name but refused to state her last name. Sergeant Mills warned Wright, "If you don't tell us your name, we can't figure out if you're licensed. You're going to be arrested for driving without a license." She dismissed Sergeant Mills's warning and responded by telling the officers to "give [her] a ticket." And when an officer told her that she would be arrested because they could not write a ticket without knowing who she was, Wright replied, "Exactly." Sergeant Mills again informed Wright that she could either provide her full name or she would be arrested for failing to identify herself. She still declined to provide her last name, deflecting that question by stating that she would "call [her] sister" to come to the scene.

Sergeant Mills advised her that she was under arrest and began gaining control of her arms to handcuff her. At that moment, Officer Weeks's body-worn camera footage showed Wright being led over to one of the police vehicles by the three officers attempting to handcuff her while she asked the officers to stop. After being restrained against the vehicle, the footage shows Wright gripping her cell phone, and then contorting her wrist while pulling back against the officer's attempt to remove it from her hand. After taking the phone from Wright's hand, the officers pulled her arms up to attempt to complete handcuffing her. She repeatedly exclaimed "that hurts," and stated that "you put me up against the car." Wright also asked the officers to "call her sister." The officers responded by telling her to "relax [her] arms," "stop resisting," and "stop fighting."

After a less than one-minute struggle, the officers were able to handcuff Wright. One of the officers then tried to take her car keys that were on a plastic band around her wrist, but Wright gripped the plastic band in a clenched fist to prevent the officer from seizing it. The

bodycam footage ends with Wright clutching the plastic band while being told by the officers to "let go of it." Wright was transported to jail and subsequently charged on December 18, 2021, for violating Code § 18.2-460 for knowingly obstructing a law-enforcement officer in the performance of their duties without just cause. She was also charged for failing to identify herself to a law enforcement officer.

A jury trial on the charges was held on December 9, 2022. At trial, Officer Weeks testified that when the officers tried to arrest Wright and place handcuffs on her, she "tensed up her arms" and "resisted" their efforts to "place her hands behind her back." Officer Weeks also testified that she "gripped" items in her hand to prevent officers from removing them. Sergeant Mills corroborated Officer Weeks's testimony that when the officers attempted to arrest Wright, she "tensed her arms up and made it difficult" to handcuff her. He also testified that it took three officers "grab[bing] [Wright's] arms" and "forcibly put[ting] her arms behind her back" to finally handcuff her. Finally, he added that the officers repeatedly told Wright to "stop resisting" because she was "not compliant."

At the conclusion of the Commonwealth's case-in-chief, Wright moved to strike both charges, alleging that the Commonwealth had failed to prove all the elements of the two charges. In support of the motion to strike, Wright contended that she did not obstruct justice because the officers were able to complete their investigation and that her resistance stemmed only from the pain caused by her arms "being wrenched behind [her] back" by the officers. The trial court denied the motion to strike both charges. After a recess, Wright rested her case before renewing her motion to strike at the conclusion of all the evidence, reiterating her previous arguments. The trial court also denied the renewed motion, holding that the Commonwealth presented sufficient evidence to permit the jury to resolve the case. The trial court then advised the Commonwealth and Wright of the instructions it intended to give to the jury as to the law

applicable in the case. One of the instructions given by the trial court without objection instructed the jury that the Commonwealth had the burden to prove beyond a reasonable doubt that the obstruction of a law enforcement officer as alleged in the case was committed "by force."

Following closing arguments, the jury deliberated and convicted Wright on both charges. After a subsequent sentencing hearing, the trial court sentenced Wright to 90 days in jail on each charge, all suspended. Wright appealed.

## II. ANALYSIS

### A. *Standard of Review*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

"If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). And "[a] jury, sitting as factfinder, 'views video and other evidence to determine what it believes happened'; an appellate court 'view[s] video evidence not

to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as the [jury] did.'" *Colas v. Tyree*, 302 Va. 17, 36 (2023) (alterations in original) (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022)). However, we review questions of law "*de novo* on appeal." *Baugh v. Commonwealth*, 68 Va. App. 437, 442 (2018) (quoting *Martin v. Commonwealth*, 64 Va. App. 666, 669 (2015)).

B. *The evidence is not sufficient to prove that Wright used force to obstruct the officers in the performance of their duties pursuant to Code § 18.2-460(B).*

Wright contends that the evidence was insufficient to sustain her obstruction of justice conviction because the evidence failed to prove beyond a reasonable doubt that she obstructed justice through the use of force. She asserts that the record only establishes that she "tensed up or stiffened her arms" to the point the officers had to put her arms "forcibly" behind her back to handcuff her. She maintains that although she was "less than fully cooperative," the evidence was insufficient, based on our prior precedent and the jury instructions, to prove that she intended to impede or obstruct the officers by force.[4] We agree.

Virginia recognizes a "broad distinction between avoidance [of a lawful arrest] and resistance or obstruction." *Cromartie v. Billings*, 298 Va. 284, 301 (2020) (alteration in original) (quoting *Jones v. Commonwealth*, 141 Va. 471, 478 (1925)). In this case, the arrest warrant charged Wright with obstruction under Code § 18.2-460(A) and the jury returned a verdict of guilty "as charged in the warrant."[5] In a prosecution under Code § 18.2-460(A), the

---

[4] To note, Wright's argument was preserved for appellate review by her objection to the sufficiency of the evidence used to convict her under the statute. This is because a sufficiency challenge that asserts insufficient evidence existed under the "statute" to convict is a sufficiency challenge to "all of the elements of the statute." *Commonwealth v. Herring*, 288 Va. 59, 73 (2014).

[5] And the trial court's conviction order did not identify the subsection of Code § 18.2-460 under which it convicted Wright but instead recites the Virginia Crime Code ("VCC") for Code § 18.2-460(A). To note, VCCs are "only . . . used to facilitate administration and research, and

Commonwealth does not have to prove that the accused used force. *Hamilton v. Commonwealth*, 69 Va. App. 176, 193 n.8 (2018) ("Threat or force is an element of Code § 18.2-460(B)—not of Code § 18.2-460(A).").

However, the trial court in this case instructed the jury, without objection, concerning the elements for a conviction under Code § 18.2-460(B), including that the Commonwealth had to prove that Wright used force. Under established precedent, that instruction became the law of the case and is binding on this Court. *Owens-Illinois, Inc. v. Thomas Baker Real Estate, Ltd.*, 237 Va. 649, 652 (1989) ("It is well settled that instructions given without objection become the law of the case and thereby bind the parties in the trial court and this Court on review."); *Hamilton*, 69 Va. App. at 195 (holding that this Court was bound by the trial court's instruction concerning the elements of Code § 18.2-460(B) where the defendant had been charged with violating Code § 18.2-460(A)). Thus, we hold that because the trial court gave this instruction that required the Commonwealth to prove the elements of Code § 18.2-460(B) to convict Wright, we are required to review the elements of Code 18.2-460(B) on appeal.[6]

Under Code § 18.2-460(B), a person is guilty of obstructing justice if she, "by threats or force, knowingly attempts to intimidate or impede a . . . law-enforcement officer . . . lawfully engaged in his duties as such." Code § 18.2-460(B). The General Assembly's use of the term "[o]bstruction 'ordinarily implies opposition or resistance by direct action.'" *Cromartie*, 298 Va. at 301 (quoting *Brown v. City of Danville*, 44 Va. App. 586, 597 (2004)). Thus, to be guilty of obstruction under the statute there must be evidence of "acts clearly indicating an intention on

---

shall not have any legal standing as they relate to a particular offense or offenses." Code § 19.2-390.01. As a result, the use of a VCC versus the actual code section in the trial court's order does not matter for our purposes in analyzing Wright's assignments of error.

[6] Our conclusion is also supported by the Commonwealth's concession at oral argument that this jury instruction is "binding as to the ultimate conviction."

the part of the accused to prevent the officer from performing his duty, as to 'obstruct' ordinarily implies opposition or resistance by direct action." *Lucas v. Commonwealth*, 75 Va. App. 334, 344 (2022) (quoting *Jordan v. Commonwealth*, 273 Va. 639, 648 (2007)).

Force under the statute means "[p]ower, violence, or pressure directed against a person or thing." *Jordan*, 273 Va. at 648 (alteration in original) (quoting *Black's Law Dictionary* 673 (8th ed. 2004)). "Acts sufficient for an obstruction conviction 'may be either active or passive.'" *Lucas*, 75 Va. App. at 344 (quoting *Maldonado v. Commonwealth*, 70 Va. App. 554, 563 (2019)). In proving active resistance through force "it is not necessary that there be an actual or technical assault upon the officer[.]" *Maldonado*, 70 Va. App. at 563 (alteration in original) (quoting *Jordan*, 273 Va. at 648). But the actions in question must go beyond actions that "merely frustrate a police officer's investigation," into conduct that "'oppose, impede, or resist' an officer's lawful efforts to conduct an investigation." *Id.* at 569 (quoting *Ruckman v. Commonwealth*, 28 Va. App. 428, 431 (1998)).

Cases in which we have found sufficient force under the statute include *Hamilton* where a defendant pushed a "door closed while the officers pushed to keep the door open from the other side." 69 Va. App. at 196. And, four years later in *Lucas*, we found evidence that the appellant used his arm to "push[] off" of an officer attempting to handcuff him was sufficient to support an obstruction conviction. 75 Va. App. at 345.

In *Jordan*, the relevant evidence of force occurred after Jordan had been arrested, but before he was taken in front of the magistrate for a probable cause determination. 273 Va. at 643-44. At that time, an officer tried to handcuff Jordan and he "stiffen[ed] his arms and began pulling away . . . any time[] that he had the opportunity," causing the officer to "forcefully put [Jordan's] arms behind his back" to finish cuffing him. *Id.* (alterations in original). The Commonwealth also introduced evidence that while being escorted "to the probable cause

hearing and to his bond hearing, Jordan walked slowly and pulled away" while walking with the officer and "stopped repeatedly, causing" the officer to "bump into him." *Id.* at 644. There, our Supreme Court held that under Code § 18.2-460(C),[7] the accused did not use force to obstruct the officer. *Id.* at 648. It reasoned that though the defendant was "less than cooperative and his conduct rendered [the officer's] discharge of his duties more difficult," this conduct did not rise to be considered a "use of force" under the statute because it "did not impede or prevent" the performance of the officer's duties. *Id.* at 649.

Here, the evidence of force in the record is more similar to the evidence in *Jordan* than what we were faced with in *Hamilton* or *Lucas*. In *Jordan*, part of the relevant evidence of force in that case was that while an officer tried to handcuff him, the accused "stiffen[ed] his arms and began pulling away . . . any time[] that he had the opportunity," causing the officer to "forcefully put [Jordan's] arms behind his back." 273 Va. at 643-44 (alterations in original). The testimony and video evidence the Commonwealth adduced in this case demonstrated that Wright similarly "tensed up her arms" and "resisted" the officers' efforts to "place her hands behind her back," as three officers attempted to handcuff her. The video evidence further established that the officers were able to complete handcuffing Wright, though she resisted, shortly after the officers seized her arms.

---

[7] To convict for felony obstruction under Code § 18.2-460(C), the Commonwealth must prove that the "person" "knowingly attempt[ed] to intimidate or impede" certain law enforcement or judicial officers "or to obstruct or impede the administration of justice in any court" related to certain offenses "by threats of bodily harm or force." Code § 18.2-460(C). To note, the defendant in *Jordan* was charged with felony obstruction of justice under Code § 18.2-460(C), not misdemeanor obstruction under Code § 18.2-460(B), because he was accused of obstructing the adjudication of a drug offense, one of the certain offenses enumerated in that provision. 273 Va. at 648. Here, though the jury was instructed on the misdemeanor offense, we find *Jordan*'s analysis pertaining to the force element of the felony offense persuasive here as both offenses require the Commonwealth to prove force.

- 10 -

Also, similar to the defendant in *Jordan*, who "bump[ed] into" his escorting officer as he was taken for fingerprinting, 273 Va. at 644, Wright also continued to attempt to hinder the officers' efforts after she was handcuffed by attempting to hold on to her phone and the plastic ring containing her keys. But by working together, the officers were able to quickly remove her phone and begin to remove her key ring. Thus, consistent with the Supreme Court's conclusion in *Jordan*, her actions may illustrate that Wright attempted to impede the officers and that she made their duties "more difficult," but they fail to show that she actually used force to obstruct them. 273 Va. at 649.

This conclusion is further supported by the minimal effect Wright's attempts had in delaying her apprehension by the officers. In evaluating whether or not the action in question constitutes force that violates the statute, we have consistently held that "[o]bstruction requires 'actual hindrance or obstruction of the officer.'" *Thorne v. Commonwealth*, 66 Va. App. 248, 254 (2016) (quoting *Polk v. Commonwealth*, 4 Va. App. 590, 594 (1987)). We have also stated that "actions that make an officer's discharge of his or her duty simply more difficult, but achievable," are not such a hinderance. *Id.* at 255. In *Hamilton*, the defendant's action of barring a door against officer entry caused a hinderance by requiring the officers to "kick[] it down." *Hamilton*, 69 Va. App. at 185. Likewise, in *Lucas*, the defendant's action pushing an officer away as he attempted to handcuff him, was found to be an obstruction as it "impeded [the officer's] ability to detain him and [also] caused [two other officers] to engage in a scuffle with him in the street." *Lucas*, 75 Va. App. at 345. We find no such similar evidence here.

Further, since the three officers were able to handcuff her in less than a minute, we decline to find that Wright's dilatory actions rose to the level of obstruction sufficient to establish that Wright actually caused a "hinderance or obstruction" to law enforcement. *Thorne*, 66 Va. App. at 254 (quoting *Polk*, 4 Va. App. at 594). Certainly, the testimony and video

evidence demonstrate Wright's physical opposition to their efforts, but the evidence also documents that the officers overcame her opposition quickly by "grab[bing] her arms" and "forcibly put[ting] [them] behind her back" to handcuff her. Similarly, Wright's attempt to "grip" her cell phone failed to impede the officer for more than a few seconds and her attempt to prevent the removal of her key ring from her person occurred *after* she had been arrested. Thus, Wright's actions here are substantially different from what we were confronted with in *Hamilton* and *Lucas*, where the defendants' resistance actually delayed their eventual arrest. Hence, since we find Wright's efforts to have only inconvenienced the officers momentarily without delaying her arrest, we find her conduct does not constitute an obstruction.

Therefore, similar to *Jordan*, the record in this case fails to show that Wright exerted force against the officers, and dissimilar to the force expended in *Hamilton* and *Lucas*. In sum, the evidence only establishes that Wright "tensing up" was the extent of her feeble attempt to obstruct law enforcement. This conclusion is further supported by how quickly law enforcement overcame her feeble attempts at resistance. Since her actions are a far cry from conduct we have previously held to be "force" under the statute, *see Hamilton*, 69 Va. App. at 196; *Lucas*, 75 Va. App. at 345, we find that *Hamilton* and *Lucas* are distinguishable. Thus, we hold that Wright's feeble attempts at resistance based on tensing up was not sufficient evidence of "force" as defined in *Jordan*. 273 Va. at 649. Hence, her conviction for obstruction of justice was in error and we reverse the jury's verdict, vacate her obstruction of justice conviction, and dismiss the charge against her.[8]

---

[8] To note, generally

> [w]hen an appellant successfully challenges the sufficiency of the evidence on some (but not all) aspects of h[er] conviction, we must determine if the proven elements of the original charge qualify as a lesser-included offense. If so, the appropriate remedy on appeal is

## III. Conclusion

For the foregoing reasons, we find the evidence here of force insufficient to support Wright's conviction for obstruction of justice. Although Wright tensed her arms and attempted to hold on to items in her possession to prevent their seizure, as the Supreme Court previously held in *Jordan*, the use of force required for a conviction pursuant to the jury instruction requires more. We are therefore compelled to reverse her conviction and dismiss the obstruction charge against her.[9]

*Reversed and dismissed.*

---

a reversal of the conviction on the greater charge and a remand of the lesser charge for retrial—assuming the Commonwealth, in its prosecutorial discretion, chooses to go forward on the lesser charge.

*Crowder v. Commonwealth*, 41 Va. App. 658, 666 (2003). Here we conclude remand is unnecessary because of the invited error doctrine. To permit the Commonwealth to re-try Wright under Code § 18.2-460(A) would allow the Commonwealth to "take advantage of the situation created by [its] own wrong" namely, the giving of the erroneous instruction. *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009) (quoting *Cangiano v. LSH Bldg. Co.*, 271 Va. 171, 181 (2006)).

[9] Because we find that the record contains insufficient evidence of force for the jury to find that Wright obstructed the officers, we decline to address her remaining assignment of error as "the doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)).